Opinion delivered March 20, 1886.

---

[No. 2013.]

## Albert Foster *v.* The State.

1. Theft—Unlawfully Driving Stock from Accustomed Range—Indictment—Charge of the Court—Cases Approved.—Under an indictment for theft of an animal, the accused may be convicted of that offense, or of wilfully taking into possession and driving from its accus-

tomed range livestock not his own, without the consent of the owner, and with intent to defraud the owner thereof, which is made theft and a felony. The charge of the trial court upon the subject, harmonizing with the doctrine thus announced, was correct. Note the opinion for an approval of the doctrine as announced in the cases of Counts v. The State, 37 Texas, 593; Campbell v. The State, 42 Texas, 591; Bawcom v. The State, 41 Texas, 189; Marshall v. The State, 4 Texas Court of Appeals, 549; Powell v. The State, 7 Texas Court of Appeals, 467; Turner v. The State, Id., 596. Note also that Hurt, Judge, dissents from this ruling.

2. TERM DEFINED.—"Range," or "accustomed range," as used in the statute, is matter of local description, and, unlike a generic term requiring the species to be stated, it admits of proof under the general allegation, without defining by averments the limits of the range.

3. SAME.—VERDICT in this case found the "defendant guilty of theft as charged in the indictment," and assessed his punishment at confinement in the penitentiary for two years. *Held*, that the indictment embraced the inferior degree of theft as provided by Article 749 of the Penal Code, and also embraced the case as made by the facts in proof. The objection that the verdict is illegal, because it finds the defendant guilty of theft as charged in the indictment and assesses a punishment not provided for the specific offense of horse theft, is not tenable.

4. SAME.—Charge of the court to the jury may be looked to for the purpose of ascertaining the offense of which their verdict in such a case convicts the accused.

APPEAL from the District Court of Lavaca. Tried below before the Hon. George McCormick.

The indictment charged the appellant with the theft of three horses, the property of T. T. Dew, in Lavaca county, Texas, on the thirteenth day of May, 1884. His trial resulted in his conviction of theft as charged in the indictment, and his punishment was assessed at confinement in the penitentiary for the term of two years.

T. T. Dew was the first witness for the State. He testified that he lived at "Half Moon Timber," on Rocky creek, in Lavaca county, Texas, about eighteen miles distant from Hallettsville, and about twelve miles distant from the house of Mrs. Foster, the mother of the defendant. On the day mentioned in the indictment, the witness went to the town of Flatonia, and returned home about sunset, when he was informed that his horses were missing. On the next morning witness went to Hallettsville, procured a warrant, and with P. D. Smith and deputy sheriff Robinson went to Mrs. Foster's house, about ten miles distant from Hallettsville, at which house the defendant lived. Witness reached Mrs. Foster's house at about two o'clock

p. m., and there found Mrs. Foster, the defendant, and a young man whose name he ascertained to be Charles Kresta. He also found his three horses, standing in an enclosure near the gate. The horses being turned out of the lot, they moved off in a rapid gait towards home. One of the animals was a blaze faced bay mare, branded N on the left hip, 9 on the jaw, and TD, the witness's brand, on the shoulder. This last brand was very dim. The second animal was a two year old sorrel filly, branded TD, and the third was a bay or brown yearling colt, branded TD. The animals described belonged to the witness, and ranged in a radius of a half mile from his house. No one had the permission of the witness to take the animals.

The defendant was arrested as soon as Mrs. Foster's house was reached. The road which approached nearest the witness's house was half a mile distant. On his way home, witness and his companions stopped at the house of John Otho, who lived about four miles from witness's place, towards Mrs. Foster's. Otho looked at the horses while witness was at his house. The road leading between the neighborhoods of the witness and the defendant passed through lanes and prairie, but all of the houses on the route were situated some distance from the road. Charles Kresta, who was present to testify in this case, came to Mrs. Foster's after the arrival of witness, Smith and Robinson.

P. D. Smith, the next witness for the State, corroborated the witness Dew, and testified in addition that they met the defendant first at Mrs. Foster's house. Shortly afterwards Kresta came out of the house, followed presently by Mrs. Foster. When Dew's horses were turned out of the enclosure at Mrs. Foster's, a bay pony followed them out, and was cut out of the bunch and turned back.

John Otho was the next witness for the State. He testified that he lived in Arthur Wood's pasture, on Ponton creek, about four miles from Dew's place, in Lavaca county. He was sitting on his gallery about sundown on the day of the alleged theft, when the defendant and Charles Kresta drove a small bunch of horses up to witness's gate, and stopped. Kresta remained at the gate and the defendant came in and asked witness directions to the house of him, the defendant, on Mixon creek. Witness gave him directions and asked him if those were his horses, and if they had escaped from him. He replied that they were his horses, but that they had not escaped, that he had been driving them around trying to sell them. Defendant then left, driving

the horses towards Mrs. Foster's house. The horses then in the possession of the defendant corresponded in age and color with the horses described by Dew.

Cross-examined, the witness stated that he was not nearer the horses than fifty or sixty yards while they were in the possession of the defendant. Witness admitted that, on the examining trial, he testified that he did not know the man who came to his house with the defendant when he stopped with the horses to get directions home. Kresta was present at the examining trial, and the witness could not then recognize him. Witness now recognized Kresta as defendant's companion on that occasion, only because he had been told that Kresta was the man.

Charles Kresta testified, for the State, that he and the defendant left Mrs. Foster's house on the morning of the alleged theft to go to Dutchtown and the Half Moon Timbers in search of horses. On their return, at about two o'clock, they found a brown or bay horse belonging to the defendant, and also the three horses in question. The defendant and the witness drove the four horses to Mrs. Foster's house, and turned them into the enclosure or pasture near the house. They reached Foster's house about midnight. The witness lived on the Foster place, and was in defendant's employ. The witness remembered stopping at Otho's place, in Wood's pasture. Defendant went in to get directions home, but witness heard nothing of the conversation between him and Otho. When they took the horses, the N brand on the bay mare's hip, and the TD brand on the other two horses were plainly seen, but the brands on the mare's shoulder and jaw could not be seen—at least witness did not see them. The witness was at Mrs. Foster's when Dew and Smith came and took the horses off. Those were the same horses he and defendant got in the Half Moon Timbers.

Cross-examined, the witness stated that when defendant found the bay mare he called the witness's attention to her and told witness that she belonged to Soule Airhart, and that Airhart told him to look out for a mare branded as this one was, with an N on the shoulder and a numeral on the jaw. The N was large and conspicuous, but the witness did not then, nor did he ever, see the other brands said to be on the mare. The enclosure into which the horses were put was in front of Mrs. Foster's house, and was traversed by a public road, which road passed Mrs. Foster's house at a distance of not more than a hundred yards. The country between the Half Moon Timbers and

Mrs. Foster's house was open prairie.  No attempt was made at concealment, but several houses were passed at short distances. They passed a house in the Half Moon Timbers within a short distance of where they took possession of the horses.  They called to a man working in the field at that place, asked for some water, and how they could get out of the enclosure.  The man pointed to some bars through which defendant, witness and the horses passed.  They saw some ladies sitting on the gallery of another house near by the one described.  Defendant managed his mother's place.  The State closed.

J. S. Airhart, called Soule Airhart, a constable of Lavaca county, was the first witness for the defense.  He testified that in the spring of 1882 or 1883 he traded for three mares with George McGonagil, who lived on Rocky creek, some seven or eight miles south of T. T. Dew's place.  They were all branded N on the hip, and 6 or 9 on the jaw.  One of the mares for which he traded was a smokey dun in color, one was a bay, and one a black animal.  The dun mare had a blaze face, and one of the animals, witness could not say which, had a gotched ear.  The witness turned the animals into White's pasture, near Moravia, from which the dun mare escaped, and she had never been recovered by the witness.  A few days after the escape of the dun mare the witness met the defendant, described the mare to him, and told him that if he would get her for witness, witness would pay him five dollars, or that if he, defendant, thought the mare was worth twenty-five dollars, he could have her for that sum. Witness then lived within two miles of the defendant.

The motion for new trial raised the questions discussed in the opinion.

*Ellis & Patton*, and *A. P. Bagby*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge.  Appellant was convicted of the theft, by fraudulently driving from their accustomed range, of three horses, the property of T. T. Dew.  As originally entered, the verdict and judgment were for " theft as charged in the indictment," but the judgment was subsequently amended and entered for the offense of "fraudulently driving from their accustomed range live stock not his own."

There are but two questions presented on the record which we

deem of sufficient moment to require discussion. The indictment was in the ordinary form for theft of horses. A conviction was claimed under Article 749 of the Penal Code, which reads: "If any person shall wilfully take into possession and drive, use, or remove from its accustomed range, any live stock not his own, without the consent of the owner and with intent to defraud the owner thereof, he shall be deemed guilty of theft, and on conviction shall be confined in the penitentiary not less than two nor more than five years, or be fined in a sum not to exceed one thousand dollars, or by both such imprisonment and fine, at the discretion of the jury trying the case."

In his charge to the jury, the learned trial judge submitted as the law of the case the principles derivable from this provision of the statute, and limited the action of the jury alone to a finding based upon this article of the code, and authorized a conviction in case defendant was found guilty of a violation of this statute, and an assessment of punishment in accordance with its provisions.

It is insisted that under an ordinary indictment for theft, an accused party cannot be found guilty, as provided in Article 749, of the offense of wilfully driving stock from its accustomed range. It is to be noted that this article expressly declares that a party driving or removing stock from its accustomed range, under the circumstances mentioned, "*shall be deemed guilty of theft.*"

Every element of ordinary theft, as defined in Article 724, Penal Code, is affirmatively declared in this provision of the law, except the single one, perhaps, that the taking must be with intent to appropriate the property to the taker's own use. 1. There is the *wilful* taking *with intent to defraud,* which is in every respect tantamount to a fraudulent taking. 2. The removal or taking from the accustomed range, which in law is a taking from the possession of the owner, because stock in its accustomed range is in possession of its owner. 3. The removal must be without the consent of the owner. 4. The intent to defraud the owner, which is equivalent to an intent of depriving the owner of the value of the same; and 5. Under the circumstances stated, such driving or removal could not be otherwise than an appropriation. No other essential element than these is found in ordinary theft, and the only difference between the offenses named in Article 724, as applied to horses in Article 746, and the offense of driving horses from their range as denounced

in Article 749, *supra*, is as to the puishment. In other words, the latter crime is but a lesser degree of the former.

If the offenses are the same in all essential particulars, differing only in degree, then an indictment for ordinary theft of animals would fully apprise and put a party therein charged upon notice that the facts constituting the lesser degree could and might be proved against him at the trial. If he was thus notified, and the facts made plainly a case only of the lesser degree, then the court would only be required to charge such lesser degree, or the charge might embrace both degrees.

That such a charge is not only in an ordinary theft charge proper, but legal, and required upon a state of facts coming within the purview of Article 749, was expressly decided by our Supreme Court in Counts v. The State, 37 Texas, 593; and in the opinion of Judge Moore in Campbell v. The State, 42 Texas, 591, when our Supreme Court was composed of as able and distinguished lawyers as ever sat upon any bench, the same doctrine is again announced. Another fact connected with the decisions is that they were rendered before the adoption of our present Constitution, and consequently that instrument cannot be claimed in its use of the word "indictment" to have intended inhibiting in this class of cases the construction given by these decisions to this statute, or rather to theft as embracing this offense as one of its degrees. Again the same doctrine was declared in Bawcom v. The State, 41 Texas, 181, wherein the same learned court (Judge Moore again delivering the opinion) say: "If stock are taken and driven from their range without the owner's consent, and with intent to defraud, it is theft."

Following these decisions the Court of Appeals has uniformly declared that "under the code of this State a conviction may, under an indictment for theft of cattle, be had for wilfully driving from its accustomed range any live stock of another, without consent of the owner." (Marshall v. The State, 4 Texas Ct. App., 549; Powell v. The State, 7 Texas Ct. App., 467; and Turner v. The State, 7 Texas Ct. App., 596.) "The expression 'range' or 'accustomed range,' as used in the statute, is matter of local description, and, unlike a generic term requiring the species to be stated, it admits of proof under the general allegation, without defining by averments the limits of the range." (State v. Thompson, 40 Texas, 515.) We still believe that these decisions are based upon, and fully in accord with reason, and with law both statutory and constitutional. So

---

---

believing, we are of opinion that the charge of the court in this case was authorized by the law and demanded by the facts.

The other question raised and discussed is as to the validity and certainty of the verdict to authorize the judgment as rendered. The verdict is: "We, the jury, find the defendant guilty of theft as charged in the indictment, and assess his punishment at two years confinement in the penitentiary." It is insisted that this verdict having found defendant guilty of theft of horses, as charged in the indictment, assesses a punishment (namely, two years in the penitentiary,) which is not authorized by the law declaring the punishment for theft of horses to be imprisonment in the penitentiary for not less than five nor more than fifteen years. (Penal Code, Art. 746.)

We have seen that the charge in the indictment was theft, and theft embracing such lesser degree as is made by the facts in this case. If so, there is no reason why the verdict should not find the lesser punishment, as warranted by the facts and as attached to the lesser degree.

As to the certainty of the verdict with reference to the offense found, a similar verdict was held sufficient in Marshall v. The State, 4 Texas Court of Appeals, 549, which was an analogous case to the one we are considering, and it was further held in that case that the charge to the jury may be looked to for the purpose of ascertaining the offense of which their verdict in such a case convicts the accused. (See also Hutto v. The State, 7 Texas Ct. App., 44; Nettles v. The State, 5 Texas Ct. App., 386; Chester v. The State, 1 Texas Ct. App., 703; Cohea v. The State, 11 Texas Ct. App., 153.)

We have been unable to find any material error in the record of this case for which the judgment of the court below should be reversed, and it is consequently affirmed.

*Affirmed.*

Opinion delivered March 10, 1886.

(Judge Hurt dissents, and thinks the judgment should be reversed upon the first proposition above discussed.)