HUGH W. HILL

*v.*

JONA M. TOHILL.

*Opinion filed February 21, 1907.*

1. FENCES—*land owner owns portion of fence set off to him by fence viewers.* A land owner to whom a definite portion of a division fence has been set off by the fence viewers, under section 7 of the act relating to fences, is the owner of such fence, and may remove it for the purpose of repairing it or substituting some other kind of legal fence without the consent of the owner of the other portion of the fence.

2. SAME—*section 7 of act relating to fences is valid.* In view of the fact that nearly fifty years have elapsed since the enactment, in substantially its present form, of section 7 of the act relating to fences, and that property rights have been established in recognition of its validity, such section should not now be held to be violative of the provision of the constitution forbidding the taking of property without due process of law, unless its invalidity is clear.

3. SAME—*proviso to section 3 construed.* The proviso to section 3 of the act relating to fences, which exempts from the provision of the section relating to the trimming of hedge fences thirty rods of hedge fence which protects an orchard or buildings, applies only to orchards and buildings which are in existence, and not to those which may be planted or erected in the future.

4. SAME—*what is not ground for enjoining removal of hedge fence.* A land owner to whom a definite portion of a hedge fence has been assigned by the fence viewers cannot be enjoined by the adjoining owner from removing such fence and substituting some other form of legal fence, upon the ground that the complainant intends in the future to plant an orchard or erect buildings within the shelter of such hedge.

APPEAL from the Circuit Court of Macon county; the Hon. W. C. JOHNS, Judge, presiding.

Jona M. Tohill, the appellee, filed a bill for injunction in the circuit court of Macon county to restrain Hugh W. Hill, the appellant, from removing thirty-two rods of hedge fence on the line between the lands of appellant and those of ap-

pellee: The bill attacks the constitutionality of one section of the statute in reference to division fences. A temporary injunction was granted in term time, after notice to appellant. Thereafter appellee filed a supplemental bill praying that the injunction be enlarged in scope so as to prevent and restrain appellant from cutting, trimming or altering the condition of the hedge, and that so enlarged it be made perpetual. Appellant answered the original and supplemental bills and appellee filed a replication to the answer. A motion by appellant to dissolve the injunction was overruled. Afterwards the case was heard upon the bill, supplemental bill, answer, replication, and the same affidavits as were introduced upon the motion to dissolve the temporary injunction. A decree was entered making the injunction perpetual. The scope of the injunction, however, was not enlarged, as sought by the supplemental bill. From the decree making the injunction permanent Hill has appealed to this court.

The facts, as they appear from the affidavits, are substantially as follows:

About the year 1860 one Edmund Turpin became the owner of the south-east quarter of a section of land in Macon county, Illinois. At that time one Casner owned the east half of the south-west quarter of said section, and one White owned the land adjoining said south-east quarter on the south. Rail fences separated Turpin's land from Casner's on the west and from White's on the south. About 1865 Casner and Turpin verbally agreed to replace the rail fence between their lands with hedge, and further agreed that Casner should plant and maintain the south half of the hedge fence and Turpin the north half. At the same time White and Turpin planted a hedge fence on the line between their lands under an agreement that White should plant and maintain the west half of the hedge and Turpin the east half. In 1878 Turpin died, and devised the west half of said southeast quarter to his daughter Emily Turpin and the east half thereof to his daughter Hilda H. Roby. In 1903 Emily Tur-

pin died, and the west half of said south-east quarter passed to her heirs-at-law, who, in turn, conveyed the north twenty-four acres of said west half to Hilda H. Roby and the south fifty-six acres of said west half to appellee, Jona M. Tohill. Before her death Emily Turpin leased the entire west half of said south-east quarter to Tohill for a term of five years, and he still holds said twenty-four acres under that lease. By *mesne* conveyances from Casner and White, appellant, Hugh W. Hill, during the year 1899, became the owner of the east half of the south-west quarter of said section and the owner of the land adjoining said fifty-six acres on the south.

The hedge fences were maintained under the agreements above referred to until Tohill became the owner of said fifty-six acres, but as those agreements were made when the entire south-east quarter was owned by one person, and as under those agreements Hill would be required to maintain all the fence on the west and south of said fifty-six acres except thirty-two rods thereof on the west side of the north sixteen acres, a controversy arose between Hill and Tohill concerning what portion of the fence should be maintained by each. Being unable to reach an agreement satisfactory to both, in October, 1905, fence viewers were chosen by the parties, who met and set off to Hill to keep and maintain the north 1594½ feet of the division fence between Tohill's fifty-six acres and Hill's land west thereof, and to Tohill to keep and maintain the remainder of the division fence on the west and south of his fifty-six acres. Hill had theretofore agreed with Hilda H. Roby that the hedge between her twenty-four acres and Hill's land west thereof should be pulled up and a wire fence erected in lieu thereof at the joint expense of both. Tohill also was advised, before the fence viewers had met, that Hill intended to remove that portion of the hedge fence that should be set off to him to maintain and to erect a wire fence in its place.

After the fence viewers had allotted to Hill the north 1594½ feet of the fence between his land and Tohill's fifty-

six acres, he removed the hedge between his land and the twenty-four acres belonging to Hilda H. Roby and had a machine in position to remove said 1594½ feet of hedge for the purpose of replacing the same with a lawful wire fence, when Tohill obtained the temporary injunction restraining him from pulling up the thirty-two rods of hedge on the west side of the north sixteen acres of the fifty-six acres owned by Tohill. This sixteen-acre parcel, at the time the original bill was filed, was not improved by buildings or fruit trees of any character. For many years this tract had been used for farming purposes, and not as pasture land.

It is alleged in the original bill that it is the purpose of Tohill to plant an orchard and erect a residence on the north sixteen acres of his land, in order that he may utilize the thirty-two rods of hedge in controversy as a wind-break and protection to his proposed orchard and dwelling. By the supplemental bill it was alleged that since the filing of the original bill, and since the temporary injunction was granted, Tohill has set out a small orchard of apple and pear trees on said north sixteen acres, along and near to the hedge fence. The affidavits considered on the hearing of this cause show that before the action of the fence viewers above mentioned, Tohill had frequently expressed his intention of utilizing said sixteen acres for the purposes set forth in the original and supplemental bills.

The only matter over which there was any direct conflict in the evidence was whether the thirty-two rods of hedge fence in dispute was sufficient to turn stock.

Appellant urges as ground for reversal that he has the right to remove the hedge and substitute therefor a wire fence, so long as a good and legal fence is maintained according to law.

Appellee has assigned cross-errors questioning the action of the court in refusing to enjoin appellant from cutting, trimming or altering the condition of the thirty-two rods of hedge, and contends that if his position is not well taken in

other respects, he is, under the statute, at least entitled to have thirty rods of the hedge along the sixteen acres left untrimmed and uncut as a wind-break and protection to his orchard and contemplated dwelling house.

HUGH CREA, and HUGH W. HOUSUM, for appellant:

An action at law will lie for pulling or destroying a hedge on the division line. Tyler on Law of Boundaries, 357; *Dubois* v. *Beaver,* 25 N. Y. 123; 12 Am. & Eng. Ency. of Law, (2d ed.) 1060.

A division fence may be established by agreement, or under the statute regulating partition fences, or by prescription. *McNally* v. *O'Brien,* 88 Ill. 237; *D'Arcy* v. *Miller,* 86 id. 102; 7 Am. & Eng. Ency. of Law, (1st ed.) 900.

A land owner required by the decision of fence viewers to maintain a portion of a division fence may maintain the same of any kind of material he sees fit, or change the material in the fence, at his option. Hurd's Stat. 1905, chap. 54, secs. 2, 4, 7, 8, 10; *Newell* v. *Hill,* 2 Metc. 182; *Castner* v. *Riegel,* 24 Atl. Rep. 484; *Adams* v. *VanAlstyne,* 25 N. Y. 232; 7 Am. & Eng. Ency. of Law, (1st ed.) 902; *Burrell* v. *Burrell,* 11 Mass. 294.

A hedge on a division line is owned by the adjoining owners as tenants in common. *Dubois* v. *Beaver,* 25 N. Y. 326; Tyler on Law of Boundaries, 318-322; *Newell* v. *Hill,* 2 Metc. 182.

Where a hedge is planted as a division fence, no prescriptive right arises to have the same forever maintained and kept as a hedge. *Adams* v. *VanAlstyne,* 25 N. Y. 232; *Wright* v. *Wright,* 21 Conn. 329; *Castner* v. *Riegel,* 24 Atl. Rep. 484.

One of two adjoining owners may remove a division fence for the purpose of rebuilding. *Burrell* v. *Burrell,* 11 Mass. 294; *Cubett* v. *Porter,* 8 B. & C. 257; *Murley* v. *McDermott,* 8 A. & E. 138; 12 Am. & Eng. Ency. of Law, (2d ed.) 1060.

NELSON & WHITLEY, and J. R. FITZGERALD, for appellee:

A fence is a part of the freehold and the ownership of it is determined accordingly, and to be so considered it is not necessary that it be attached to the soil otherwise than by its own weight. On alienation it passes with the land. *Bagley v. Railway Co.* 98 Ga. 626; *'Seymour v. Watson,* 5 Black, 555; *Smith v. Carroll,* 4 Greene, 1446; *Emrich v. Ireland,* 55 Miss. 390; *Climer v. Wallace,* 26 Mo. 556.

The powers of fence viewers and like officers are limited strictly to the authority conferred upon them by statute. *Campbell v. Feyerabend,* 53 Ill. App. 225; *McDonald v. People,* 214 Ill. 83; *Farmer v. Young,* 86 Iowa, 382.

The extent of the jurisdiction of fence viewers to determine matters pertaining to a division fence depends upon the terms of the notice served by one land owner upon the other. The matters stated in the notice are jurisdictional. 19 Cyc. 477; *Scott v. Jackson,* 93 Ill. App. 529; *Thompson v. Bulson,* 78 Ill. 277; *Hale v. Andrews,* 75 id. 252.

Under the statute the owner of a division hedge fence has the right to retain, untrimmed, as a wind break for his cattle, not exceeding thirty rods of such hedge at any place on such fence where he sees fit to select it. *Robillard v. Beaupre,* 68 Ill. App. 103.

An injunction is always the proper remedy where individuals or public officers, under color of power or claim, without right, illegally attempt to injure or take property or impair the legal rights of the citizen. *Carter v. Chicago,* 57 Ill. 283; *Bryan v. East St. Louis,* 12 Ill. App. 390.

If trees or a hedge on a boundary line have special value, and one of the co-tenants derive from them special benefit, enjoyment or advantage beyond their actual value as trees or a hedge, courts of equity will not hesitate to interfere, by injunction, to restrain his co-tenant from cutting down and destroying the same. 1 High on Injunctions, sec. 344; 2 Story's Eq. Jur. sec. 928; 3 Pomeroy's Eq. Jur. sec. 1357;

*Daubenspeck* v. *Grear,* 18 Cal. 443; *Dubois* v. *Weaver,* 25 N. Y. 124; *Wilson* v. *Mineral Point,* 39 Wis. 160; *Shipley* v. *Ritter,* 7 Md. 408; *Musch* v. *Burkhardt,* 12 L. R. A. 484.

Appellee had the right to have exempted from the operation of the statute and the decision of the fence viewers thirty rods of his hedge, and to retain the same, untrimmed, for purposes of protection and wind break for home, orchard and stock. Starr & Cur. Stat. chap. 54, sec. 3; *Robillard* v. *Beaupre,* 68 Ill. App. 103.

The fence viewers had no power, by their order, to divest Tohill of his property in the hedge; nor had Hill any such right by his construction as to the effect of the order of the commissioners. Neither the order, nor Hill's construction of it, is "due process of law." Const. 1870, art. 2.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

This controversy arose over a hedge which is part of a division fence and which the fence viewers set off to appellant to maintain. The question is, may he rightfully remove it and construct a lawful fence of different material in its place without the consent of appellee, the adjoining land owner? The hedge occupies more ground than would be occupied by the proposed fence, and whether it is sufficient to turn stock is one of the questions which was controverted in the circuit court.

The fence viewers acted under section 7 of chapter 54, Hurd's Revised Statutes of 1905, which provides: "If disputes arise between the owners of adjoining lands, concerning the proportion of fence to be made or maintained by either of them, such dispute shall be settled by any two of the fence viewers of the town or precinct, as the case may be, and in such cases it shall be the duty of the two fence viewers to distinctly mark and define the proportion of the fence to be made or maintained by each."

Under a statute which, in substance, cannot be distinguished from the one above set out, the Supreme Court of Massachusetts has held "that the part of the fence assigned by fence viewers to one owner to keep in repair was his property, so far, at least, that the removal of it for the purpose of replacing it with another fence of a different kind could not make him a trespasser," and that the owner to whom a portion of the fence has been so assigned has the right to remove it for the purpose of repairing it or replacing it by some other lawful partition fence. *Burrell* v. *Burrell*, 11 Mass. 294; *Ropes* v. *Flint*, 182 id. 473.

Adopting the view of the Massachusetts court, we conclude that after the fence viewers had assigned the hedge fence to appellant to maintain he had the right to remove the hedge and substitute therefor a lawful fence of other material without the consent of the adjoining land owner.

As to the statute so construed, appellee contends that as the hedge was set out and maintained by his predecessors in title, and that as he succeeded to such ownership thereof as they enjoyed, the legislature could not, without violating that provision of the constitution which forbids the taking of private property without due process of law, enact a statute which by its terms authorized the fence viewers to assign the hedge fence to appellant to maintain, when such assignment would wholly deprive appellee of all right of control over the fence so assigned.

In *McKeever* v. *Jenks*, 59 Iowa, 300, it was held that an Iowa statute vesting in fence viewers powers similar to those conferred upon such officers by section 7, *supra*, was not properly subject to the constitutional objection here urged. Other authorities of the same general tenor are *Davis* v. *Board of County Comrs.* 65 Minn. 310; editor's note to *Myers* v. *Dodd*, 9 Ind. 290, found at page 629, volume 68, American Decisions; *Gilson* v. *Munson*, 114 Mich. 671; *Tomlinson* v. *Bainaka*, 163 Ind. 112; and *Coster* v. *Tide Water Co.* 18 N. J. Eq. 54.

There are authorities which sustain appellee's position, but we deem it unnecessary to discuss them in view of certain historical considerations hereinafter detailed, affecting section 7, *supra.*

This question does not seem to have been heretofore discussed in any of the opinions of this court. It is, however, apparent from language found in our Reports relating to the statute here in question and to other statutes conferring like powers upon fence viewers, and from the fact that this identical statute has been enforced by this court in at least one case, that this court has long regarded this enactment as valid. *Ketchum* v. *Stolp*, 15 Ill. 341; *McCormick* v. *Tate*, 20 id. 334; *Hale* v. *Andrews*, 75 id. 252; *Thompson* v. *Bulson*, 78 id. 277; *D'Arcy* v. *Miller*, 86 id. 102.

Various provisions of chapter 54, *supra*, to which the objection now made applies with as great force as it does to section 7, *supra*, have been regarded as enforcible by the Appellate Courts of the State. *Boyd* v. *Lammert* 18 Ill. App. 632; *Deimel* v. *Obert*, 20 id. 557; *Campbell* v. *Feyerabend*, 53 id. 225; *Scott* v. *Jackson*, 93 id. 529.

It is to be observed that this section, except for a mere verbal variance, was first enacted in 1857, (Sess. Laws of 1857, p. 159,) and has been continuously in force since that time, and if violative of the constitution of 1870 it also contravened the constitution of 1848. To sustain the appellee's contention now would be to unsettle that which has for well nigh fifty years been tacitly held by the courts of the State to be the law, and would be to destroy property rights which have grown up and been established on the theory that this statute was enforcible. This law having been regarded as valid and enforced without question as to its constitutionality by this court and other courts of the State since 1857, we would not now be justified in holding it to be unconstitutional unless its invalidity was clear, certain and beyond question. (Cooley's Const. Lim.—7th ed.—103, 104; Story on the Constitution, sec. 405; *Martin* v. *Hunter's Lessees,*

1 Wheat. 304; *Bank* v. *Halstead,* 10 id. 51; *Stuart* v. *Laird,* 1 Cranch, 299; *Swift* v. *Calnan,* 102 Iowa, 206; *State* v. *Blake,* 36 N. J. L. 442; *Bingham* v. *Miller,* 17 Ohio, 445.) While the question under discussion might in the first instance have presented some difficulty, the statute here challenged must now be regarded as a proper exercise of the police power.

Section 3 of chapter 54, *supra,* after requiring that each of the adjoining land owners shall make and maintain a just proportion of the division fence, and that if such fence be a hedge fence it shall be cut back or trimmed at certain intervals, contains a proviso to the effect "that the provisions of this section shall not apply to any hedge fence protecting either an orchard or buildings or wind-break, not to exceed thirty rods." The appellee contends that thirty rods of this hedge fall within that proviso and consequently cannot be lawfully removed or trimmed or cut back without his consent. It is apparent that at the time this suit was commenced the hedge was not within that proviso, and its terms therefore have no application. The fact that appellee may have then intended at some time in the future to locate an orchard and buildings at a place where the hedge would, if still standing, protect them, is without significance. It is apparent from the words of the proviso that it is intended to apply only to a hedge which is actually within the terms of the exception to the statute at the time the proviso is invoked, and not to a hedge which is not then, but may at some future time be, within such terms.

Appellee's next proposition is that, irrespective of the statute, a court of equity should interfere by injunction to restrain the removal of this hedge, for the reason that he derives special benefit, enjoyment or advantage from it beyond its actual value as a fence. This is based on the fact that the hedge, if permitted to remain as it is, will afford protection for the orchard which appellee, at the time of filing the original bill, intended thereafter to plant and the

buildings which he intended thereafter to erect. The proof shows that at the time the original bill was filed the only benefit, enjoyment or advantage which the appellee derived from this hedge was not greater than that which he would derive from any lawful division fence. The only special value which he claimed was one which did not then exist but which he averred would exist in the future.

It follows, therefore, that the proposition last mentioned, even if it be in accord with the law of this State, as to which we express no opinion, will not control.

The decree of the circuit court will be reversed and the cause will be remanded, with directions to enter a decree dissolving the injunction and dismissing the bill for want of equity.

*Reversed and remanded, with directions.*