(October 5, 1915.)

# STATE, Respondent, v. SECUNDINO OMAECHEV-VIARIA, Appellant.

[152 Pac. 280.]

PENAL STATUTES—DEFINITENESS OF TERMS—LANGUAGE OF SEC. 6872, REV. CODES, SUFFICIENTLY DEFINITE AND CERTAIN.

1.   This is a companion case to that of *State* v. *Horn et al., ante,* p. 782, and the conclusions reached by this court in that case are decisive of all but one of the questions raised in the case at bar, viz., the uncertainty of sec. 6872, Rev. Codes, and consequently its unconstitutionality as a criminal statute.

2.   Where a statute has been in force for many years, receiving a practical interpretation and accepted in all its terms, the most careful consideration should be given questions involved in its interpretation if it then be attacked as conflicting with the constitution; as, unless its language is so obscure and doubtful as to entitle it to no weight or consideration, the long-accepted, practical interpretation is more likely to be right than a newly discovered one suggested by the exigencies of current litigation.

3.   *Held,* that sec 6872, Rev. Codes, which was enacted by the 12th session of the territorial legislature in 1883, re-enacted as sec. 6872; Rev. Stat. of 1887, and continued in force by sec. 2 of the schedule and ordinance contained in article 21 of the state constitution, approved by the federal government at the time Idaho was admitted to the Union, is couched in sufficiently definite language to meet the object sought to be attained.

4.   Where there are two constructions that may be fairly given a legislative act designed to effect a great public purpose, one of which will carry out the intent and purpose and the other will defeat the intent and purpose of the act, the former construction should be applied.

5.   Laws are enacted to be read and obeyed by the people, and in order to reach a reasonable and sensible construction thereof, words that are in common use among the people should be given the same meaning in the statute as they have among the great mass of the people who are expected to read, obey and uphold them.

6.   A cattle range in this state has a well-defined meaning, and so has a sheep range; and this meaning is fully recognized by persons engaged in the two industries.

7.   Sec. 6872, Rev. Codes, is a police regulation and must necessarily be construed with and as a part of sec. 6314, Rev. Codes,

which provides: "In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence." In other words, there must be an intent to violate sec. 6872, Rev. Codes, *supra,* as well as the act of driving or herding sheep upon a cattle range, in order to warrant a conviction of the defendant.

APPEAL from the District Court of the Third Judicial District for Owyhee County.   Hon. Carl A. Davis, Judge.

Criminal prosecution for herding, grazing and pasturing sheep upon a cattle range, in violation of sec. 6872, Rev. Codes.   Judgment for plaintiff.   *Affirmed.*

Oppenheim & Hodgin, for Appellant.

The statute is arbitrary in that it leaves the determination of the facts to the arbitrary action of the person claiming adversely to the defendant.   (Black's Constitutional Law, 2d ed., p. 377 (citing *Yick Wo v. Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. ed. 220); 6 Ruling Case Law, 194; *Miller v. Horton,* 152 Mass. 540, 23 Am. St. 850, 26 N. E. 100, 10 L. R. A. 116; *First Nat. Bank v. Sarlles,* 129 Ind. 201, 28 Am. St. 185, 28 N. E. 434, 13 L. R. A. 481; *Pearson v. Zehr,* 138 Ill. 48, 32 Am. St. 113, 29 N. E. 854.)

"The legislature has no authority to pronounce the performance of an innocent act criminal when the public health, safety, comfort, or welfare is not interfered with." (*Gillespie v. People,* 188 Ill. 176, 80 Am. St. 176, 58 N. E. 1007, 52 L. R. A. 283.)

The act made criminal by this statute is *per se* an innocent act; that is to say, there is no offense, neither does it affect the general welfare, when sheep are herded or grazed upon the public domain.   (*Buford v. Houtz,* 133 U. S. 320, 10 Sup. Ct. 305, 33 L. ed. 618; *State v. Dalton,* 22 R. I. 77, 84 Am. St. 818, 46 Atl. 234, 48 L. R. A. 775; *Stearns v. City of Barre,* 73 Vt. 281, 87 Am. St. 721, 50 Atl. 1086, 58 L. R. A. 240; *City of Laurens v. Anderson,* 75 S. C. 62, 117 Am. St. 885, 55 S. E. 136, 9 Ann. Cas. 1003.)

Under the statute we are considering, it is impossible for a sheep-grower to know even approximately when he is about to violate the statute or has violated the same. (*State v. Conlon,* 65 Conn. 478, 48 Am. St. 227, 33 Atl. 519, 31 L. R. A. 55.)

The sheep-grower cannot know beforehand what he can and cannot do under this statute, because there is no provision in the law whereby it may be determined beforehand that a given section of the country is a cattle range. Neither does it provide any method of establishing or fixing the exact boundary lines of said range. The determination of these two facts is necessary before the sheep-grower can know or before anyone else can know whether or not the statute has been violated. The law is vague, indefinite and uncertain. (*Louisville & N. R. Co. v. Commonwealth,* 99 Ky. 132, 59 Am. St. 457, 35 S. W. 129, 33 L. R. A. 209; *Tozer v. United States,* 52 Fed. 917; *Knight v. Trigg,* 16 Ida. 256, 100 Pac. 1060; *Anderson v. Great Northern R. Co.,* 25 Ida. 433, 138 Pac. 127; *State v. Cudahy Packing Co.,* 33 Mont. 179, 114 Am. St. 804, 82 Pac. 833, 8 Ann. Cas. 717.)

J. H. Peterson, Atty. Genl., T. C. Coffin, Asst., R. G. Adams and William Healy, for Respondent.

"We cannot concede that the police power of the state does not extend over the public domain." (*Sweet v. Ballentyne,* 8 Ida. 431, 69 Pac. 995.)

The privileges which citizens have of grazing their stock upon the public domain are subject to regulation and control on the part of the state governments. (*Buford v. Houtz,* 133 U. S. 320, 10 Sup. Ct. 305, 33 L. ed. 618; *Bacon v. Walker,* 204 U. S. 311, 27 Sup. Ct. 289, 51 L. ed. 499.)

The provisions of the 14th amendment do not apply and were never intended to apply to police regulations enacted by the several states. (*Barbier v. Connolly,* 113 U. S. 27, 5 Sup. Ct. 357, 28 L. ed. 923; *Minneapolis & St. Louis R. Co. v. Beckwith,* 129 U. S. 26, 29, 9 Sup. Ct. 207, 32 L. ed. 585; *Haigh v. Bell,* 41 W. Va. 19, 23 S. E. 666, 31 L. R. A. 131.)

The necessity and desirability of police regulations are largely matters for the judgment of the legislature. (*Minne-*

*apolis & St. Louis R. Co. v. Beckwith, supra; Bacon v. Walker, supra.*)

The term "cattle range" has a well-defined popular meaning. "Words that are in common use among the people should be given the same meaning in the statute as they have among the great mass of the people who are expected to read, obey and uphold them." (*Adams v. Lansdon,* 18 Ida. 483, 110 Pac. 280; *Ex parte Bossner,* 18 Ida. 519, 110 Pac. 502; *State v. Stuth,* 11 Wash. 423, 39 Pac. 665.)

L. B. Green, Solon Orr, B. S. Crow and K. I. Perky, as *Amici Curiae.*

A state statute cannot create a possessory right in unoccupied government lands, or regulate the use of such lands. (*Douglas County Commrs. v. Union Pac. Ry. Co.,* 5 Kan. 615, 624; *Oregon Short Line R. Co. v. Quigley,* 10 Ida. 770, 781, 80 Pac. 401; *City of Guthrie v. Beamer,* 3 Okl. 652, 41 Pac. 647; *United States v. Utah Power & Light Co.,* 209 Fed. 554, 126 C. C. A. 376.)

"The disposal of public lands within the state by act of Congress can in no way be limited by state statute." .(*United States v. Shannon,* 151 Fed. 863, 866; *David v. Rickabaugh,* 32 Iowa, 540; *Farrington v. Wilson,* 29 Wis. 383, 390.)

The privileges accorded by the United States for grazing upon public lands are subject alone to their control. (*Buford v. Houtz,* 133 U. S. 320, 10 Sup. Ct. 305, 33 L. ed. 618; *Irvine v. Marshall,* 61 U. S. (20 How.) 558, 15 L. ed. 994.)

No state legislature can interfere with this right or embarrass its exercise. (*Gibson v. Chouteau,* 80 U. S. 92, 20 L. ed. 534; *Wilcox v. Jackson,* 38 U. S. 498, 516, 10 L. ed. 264, 273.)

No person may acquire a prior right to pasture the public lands of the United States in the absence of such legislation by Congress. (*McGinnis v. Friedman,* 2 Ida. 393, 17 Pac. 635; *Wilkinson Livestock Co. v. McIlquam,* 14 Wyo. 209, 83 Pac. 364, 3 L. R. A., N. S., 733.)

The federal government alone may prescribe rules and regulations concerning the use of its public lands. (*Forsythe v. United States,* 3 Ind. Terr. 599, 64 S. W. 548; *United*

*States v. Mattock,* 2 Sawy. 148, Fed. Cas. No. 15,744; *United States v. Loving,* 34 Fed. 715; *United States v. Hunter,* 4 Mackey (D. C.), 531.)

The federal constitution and the statutes under it recognize no distinction between the different kinds of stock, as creating any difference in right to the use of the public pasture lands. (Brannon's 14th Amendment, pp. 67, 322.)

"Any . . . . interruption or deprivation of the common, usual and ordinary use of property is . . . . a taking of one's property in violation of the constitutional guaranty." (*Knowles v. New Sweden Irr. Dist.,* 16 Ida. 235, 101 Pac. 87.)

Sec. 6872, Rev. Codes, usurps the judicial power of the courts of this state in that it adjudicates the question of whether appellant has the right to use the public pasture lands of the United States. (*City of Janesville v. Carpenter,* 77 Wis. 288, 20 Am. St. 123, 46 N. W. 128, 8 L. R. A. 808.)

BUDGE, J.—This prosecution was brought in the probate court of Owyhee county, against the defendant, charging him with the commission of a misdemeanor, to wit, herding, grazing and pasturing sheep upon a cattle range in violation of sec. 6872, Rev. Codes.

The case was tried before the court without a jury, a jury trial having been waived, and judgment was pronounced against the defendant finding him guilty as charged.

An appeal was taken to the district court of the third judicial district in and for Owyhee county from said judgment.

After a demurrer to the complaint had been overruled the cause was tried before the court and a jury and a verdict returned finding the defendant guilty as charged in the complaint.

Judgment was pronounced in accordance with the verdict, and it was further ordered that judgment be stayed pending appeal to this court, and that bond in the sum of $500 be furnished pending said appeal.

Thereafter, defendant filed his motion for new trial, which was denied by order of the court, and an appeal was taken

to this court both from the judgment and from the order denying defendant's motion for a new trial.

This is a companion case to that of *State v. Horn, ante,* p. 782, and the conclusions reached by this court in that case are decisive of all but one of the questions raised in the case at bar.

In the case at bar counsel for appellant raise an additional question, namely, the uncertainty of sec. 6872, Rev. Codes, *supra,* and consequently its unconstitutionality as a criminal statute. They contend that the statute is vague, indefinite and uncertain, in that it fails to define a cattle range; that it provides no means of determining the character of the range, fixing the exterior boundaries thereof or marking out said boundaries upon the ground; and that it is arbitrary—leaving the determination of the above facts to the arbitrary action of the person or persons claiming adversely to appellant.

The statute in question provides: "Any person owning or having charge of sheep, who herds, grazes, or pastures the same, or permits or suffers the same to be herded, grazed or pastured, on any cattle range previously occupied by cattle, or upon any range usually occupied by any cattle grower, either as a spring, summer or winter range for his cattle, is guilty of a misdemeanor; *but the priority of possessory right between cattle and sheep owners to any range, is determined by the priority in the usual and customary use of such range, either as a cattle or sheep range."*

This statute was enacted by the 12th session of the territorial legislature of 1883. It was part of an act entitled "An act for the protection of stock-growers in Owyhee, Boise, Oneida, Bear Lake, Lemhi and Custer counties." It was re-enacted as sec. 6872, Rev. Stat. of 1887. The statute was continued in force by sec. 2 of the schedule and ordinance contained in art. 21 of the state constitution; and the state constitution, together with the schedule, was approved by the federal government at the time Idaho was admitted as a state.

While, it is true, this section of the statutes has never been before this court for construction, yet it has been for thirty-

two years accepted to a greater or less extent by the industries of the state affected thereby. The terms of the statute, by reason of the fact that it has been part of the law of this state during all these years, have a well-defined meaning. The fact that a statute has been in force for many years, and, the presumption is, obeyed by the citizens of the state, and received a practical interpretation, unless its language is so obscure and doubtful that it is entitled to no weight or consideration, may be urged as an additional reason why the most careful consideration should be given to the questions involved in its interpretation and application where it is contended that it is in conflict with the constitution.

It has been said by respectable authority that a construction of a statute which has for a third of a century been accepted by everyone as so obviously correct as never to have been questioned is much more likely to be right than a newly discovered one suggested by the emergencies of current litigation. (*Willis v. Mabon,* 48 Minn. 140, 31 Am. St. 626, 50 N. W. 1110, 16 L. R. A. 281.) This principle has been applied in upholding statutes the constitutionality of which was not attacked until after sixty years, fifty years, forty-five years, forty years, thirty years, and even twenty years. (*McPherson v. Secretary of State,* 92 Mich. 377, 31 Am. St. 587, 52 N. W. 469, 16 L. R. A. 475; *Hill v. Tohill,* 225 Ill. 384, 80 N. E. 253, 8 Ann. Cas. 423; *Butte City Water Co. v. Baker,* 196 U. S. 119, 25 Sup. Ct. 211, 49 L. ed. 409; *Baker v. Butte City Water Co.,* 28 Mont. 222, 104 Am. St. 683, 72 Pac. 617.)

Courts approach constitutional questions with great deliberation, exercising their power in this respect with the greatest possible caution and even reluctance, and should never declare a statute void unless its invalidity is, in their judgment, beyond a reasonable doubt. (*State v. Pioneer Nurseries Co.,* 26 Ida. 332, 143 Pac. 405.)

So far as statutes fairly may be construed in such a way as to avoid doubtful constitutional questions they should be so construed. (*United States v. Delaware & Hudson Co.,* 213 U. S. 366, 29 Sup. Ct. 527, 53 L. ed. 836.)

There is also an established rule of statutory construction that where there are two constructions that may be fairly given a legislative act designed to affect a great public purpose, one of which will carry out the intent and purpose, and the other will defeat the intent and purpose of the act, the former construction should be applied. (*Imperial Irr. Co. v. Jayne*, 104 Tex. 395, 138 S. W. 575, 582, Ann. Cas. 1914B, 322.)

In the case of *Adams v. Lansdon*, 18 Ida. 483, 110 Pac. 280, the following language is used by this court:

"Laws are enacted to be read and obeyed by the people, and in order to reach a reasonable and sensible construction thereof, words that are in common use among the people should be given the same meaning in the statute as they have among the great mass of the people who are expected to read, obey and uphold them."

In the case of *State v. Stuth*, 11 Wash. 423, 39 Pac. 665, a penal statute providing that every person who disturbs any religious society, when meeting together in public worship, shall be fined, was attacked on the ground that it was invalid for uncertainty in that it failed sufficiently to define the crime. It was held that the statute was not uncertain, the words "disturb" and "religious society" being used in their ordinary sense.

In *Foster v. State*, 21 Tex. App. 80, at p. 87, 17 S. W. 548, the court had under consideration a similar statute. It was objected in that case that the range was not set out or described in the indictment. It was held that the term "range" as used in the statute is a matter of local description, and unlike a generic term requiring the species to be stated, it admits of proof under the general allegation, without defining by averment the limits of the range.

See, also, case of *Fox v. State of Washington*, 236 U. S. 273, 35 Sup. Ct. 383, 59 L. ed. 000.

The word "range" is defined in the Century Dictionary and Cyclopedia, p. 4955, subdiv. 7, as "A tract or district of land within which domestic animals in large numbers range

for subsistence; an extensive grazing ground; used on the great plains of the United States for a tract commonly of many square miles, occupied by one or by different proprietors, and distinctly called a cattle, stock, or sheep range. The animals on a range are usually left to take care of themselves during the whole year without shelter, excepting when periodically gathered in a 'round-up' for counting and selection, and for branding when the herds of several proprietors run together.''

A cattle range in this state has a well-defined meaning, and so has a sheep range; and this meaning is fully recognized by persons engaged in the two industries.

While it might be possible for sheep to graze upon a cattle range, it is well known to all stock-growers that sheep and cattle will not range together, and that cattle and horses will not range on a sheep range. Thus legislation to protect sheep against cattle and horses is wholly unnecessary.

It is also well known to stock-growers that cattle and horses have their accustomed range, to which they go, if permitted, of their own volition, and upon which they range, and where they can be found by the owners.

It is a matter of common knowledge that horses and cattle are left upon a cattle range receiving but little care and attention during the summer months by their owners; while sheep are constantly under the care of herders and dogs. Moreover, that a camp-tender is employed in connection with the care and herding of sheep, among whose duties is the riding of the range for the purpose of locating suitable area upon which to drive, herd and graze the sheep of his employer.

Sheep require much less water while grazing than cattle, and it therefore becomes necessary for cattle and horse owners to occupy portions of the public domain upon which there are streams and springs of water to which their animals may have ready access.

The above are all very good reasons why it is imperative that the public domain within the jurisdiction of the state be properly regulated as between these two necessary and needful industries. Sec. 6872, Rev. Codes, is a police regula-

tion, and to our minds it clearly appears that it was the intention of the legislature, in the enactment of said section, to preserve the tranquility of the citizens of the state; to avoid "range wars"; and to promote the peace, quiet and general welfare of the citizens.

This statute must necessarily be construed with, and as a part of, sec. 6314, Rev. Codes, which latter section provides: "In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence." In other words, there must be an intent to violate said sec. 6872, *supra,* as well as the act of driving or herding sheep upon a cattle range; or the failure upon the part of the defendant by the exercise of ordinary diligence to ascertain whether or not the range upon which he drives, herds and grazes his sheep is a cattle range within the meaning of said section.

The appellant insists in his argument that sec. 6872, Rev. Codes, is void because it fails to describe the exterior limits of a cattle range, and for that reason it is impossible for a citizen herding sheep to determine when he has crossed the exterior limits of the cattle range.

The statute says: "*The priority of possessory right between cattle and sheep owners to any range, is determined by the priority in the usual and customary use of such range, either as a cattle or sheep range.*" Priority of possession, or priority of right, or the first in time is the first in right, are all common, ordinary, every-day expressions and have a well-defined meaning. The priority of right to the use of the range as between cattle and sheep owners depends upon the prior use in the usual and customary manner. Thus, if the range is used by cattle owners and has been so constantly used prior to its use by sheep owners, the right to the use is established by proof of such priority.

Where the owner of sheep knows, or by the exercise of ordinary care is able to ascertain, that a certain given area of the public domain has been used and is then being used as a cattle range, and he wilfully and knowingly herds, drives and grazes his sheep upon such cattle range, it then becomes

his willful and unlawful act or trespass, and he is clearly amenable to the statute.

These being questions of fact, are for the jury to determine, the same as would be the questions of fact in any other ordinary criminal prosecution. The intention to commit the act, as well as the commission of the act, are necessary and essential ingredients of the crime; and if both are established by competent evidence, under proper instructions, such as from our examination were given in this case, in our opinion the verdict of the jury should not be disturbed.

We think we have disposed of the question that a cattle-grower can arbitrarily fix the limits or boundaries of the range. Both the limits and boundaries of the range are determined by priority of possession and use of the range by the cattle-grower in the usual and customary use of a cattle range, and are questions of fact for the jury. The cattle-grower can neither enlarge nor diminish the area at will; but must establish by competent evidence and beyond a reasonable doubt that the defendant in charge of the sheep wilfully and unlawfully herded, grazed or pastured them upon a cattle range, as heretofore defined; that said range had been previously occupied by cattle, or was occupied by cattle-growers either as a spring, summer or winter range for their cattle, and that they, or their predecessors in the cattle business, had made the usual and customary use of such area of country as a cattle range, prior to any use thereof, in the usual and customary manner, as a sheep range, and that said range had not been abandoned as a cattle range; and that the defendant knew, or had information from which a reasonable man under like circumstance would have known, that he was herding, grazing or pasturing sheep upon a cattle range previously occupied by cattle in the usual and customary use of such range, and that sheep had not been herded, grazed or pastured upon said range prior to said time in the usual and customary use of said range.

The character and area of a cattle range are to be determined by its priority of use in the usual and customary manner as such.

We agree with learned counsel for appellant and those who appeared as *amici curiae* that all criminal statutes should be certain and definite in their terms, and commend the zeal and effort displayed by counsel in behalf of the appellant in their presentation of this case. And we are frank to admit that sec. 6872, Rev. Codes, is not as certain and definite in its terms as are the more recent statutes covering the police power. However, we have reached the conclusion that in view of the peculiar conditions existing in this state prior to the enactment of that statute (as recited in the various opinions of this court and referred to in the case of *State v. Horn, supra*), occasioned by a sharp conflict between the sheep and cattle industries and between the sheep and farming industries, it was properly deemed necessary by the legislature, in order to promote the general welfare, peace, quiet and tranquility of the citizens, to enact such a statutory provision regulating the use of the public domain within the jurisdiction of the state.

From the conclusions we have reached, we are of the opinion that sec. 6872, Rev. Codes, is not void for indefiniteness and uncertainty, and that it does not permit the cattle-grower to arbitrarily fix the limits or boundaries of the cattle range. Whatever hardships, if any, are imposed upon either the stock or sheep industry by reason of this law are to be remedied by the legislative and not the judicial branch of our state government.

The judgment of the lower court is affirmed.

Sullivan, C. J., and Morgan, J., concur.

Petition for rehearing denied.