(No. 5553.   November 13, 1930.)

GEORGE BRADSHAW, I. R. WILSON, F. W. FUNK-HOUSER and FRANK BRADBURY, Appellants, v. CLAUSE BURSTEDT, Respondent.

[293 Pac. 330.]

Solon B. Clark and Harold Holden, for Appellants.

E. H. Casterlin, for Respondent.

MCNAUGHTON, J.—This is an appeal from a judgment entered upon sustaining a demurrer to plaintiffs' second amended complaint.

Plaintiffs, in their own name and right, seek an injunction against defendant, restraining and enjoining him from grazing sheep upon certain public domain, alleged to have for 20 years theretofore been continuously and exclusively grazed by cattle, without abandonment as such range.

Appellants base their claim of right to the relief asked upon C. S., sec. 8333. This section provides:

"Any person owning or having charge of sheep, who herds, grazes, or pastures the same, or permits or suffers the same to be herded, grazed or pastured, on any cattle range previously occupied by cattle, or upon any range usually occupied by any cattle grower, either as a spring, summer or winter range for his cattle, is guilty of a misdemeanor; but the priority of possessory right between cattle and sheep owners to any range, is determined by the priority in the usual and customary use of such range, either as a cattle or sheep range."

In 1888 the same relief, upon a similar state of facts under this same statute, was denied by the courts of this state. (*McGinnis v. Friedman,* 2 Ida. 393, 17 Pac. 635.) This decision was based upon the view that, while as a protective measure, this state under its police power, could forbid under penalty the pasturing of sheep upon the public domain within the boundaries of the state which had theretofore been pastured by cattle, the state could not and did

not attempt to grant any grazing rights in the public domain; that any right to such pasturage should come from the federal government. In short, that the state statute vested no right in cattlemen by reason of prior grazing.

It is claimed by appellants: First, that this early case is out of harmony with the more recent development of the laws relating to pasturage on the public domain, in that other enactments of the state legislature confer such rights; and, second, it is claimed courts recognize a more liberal application of injunctive relief in the protection of pecuniary interest as distinguished from the older doctrine of protecting only such rights as are strictly property rights; and, third, as being out of harmony also with the newer doctrine that equity courts will now restrain acts which threaten property rights or pecuniary interest, notwithstanding the act sought to be restrained constitutes a crime cognizable in the criminal courts.

In behalf of the claimed enlargement of injunctive relief, and as the turning point toward enlargement, appellant cites *In re Debs*, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. ed. 1092. The Debs case is a clear authority that: ''The jurisdiction of a court of equity to enjoin interferences with property rights is not destroyed by the fact that they are accompanied by, or are violations of the criminal law.'' Possibly this position had not been so clearly announced prior to that decision. But no attempt was made in that case, or in any case called to our attention, to make any distinction between property rights and pecuniary interest. So far as the right endangered is concerned, it is thought the doctrine of that case, and those following it, is that equity grants injunctive relief when, and only when, civil or private rights are invaded or endangered. (5 Pomeroy's Equity Jurisprudence, 2d ed., sec. 1890, p. 4291; 14 R. C. L., Injunctions, secs. 76, 79; 10 R. C. L., Equity, sec. 92.)

On the other phase, as to power and policy of the state legislature to grant rights on the public domain, it is claimed the decision in *McGinnis v. Friedman, supra,* is out

of harmony with the "Two-Mile Limit Law," C. S., sec. 1908, and the decisions of this court construing and enforcing that law. That law prohibits the herding of sheep on the land or possessory claims of others or within two miles of a dwelling. In *Sweet v. Ballentyne,* 8 Ida. 431, 69 Pac. 995, 1002, Sweet recovered judgment against Ballentyne for damages assessed pursuant to said law, part of said damages being for destruction of grass on the public domain. The constitutionality of the Two-mile Limit Law was attacked and upheld in that case. It was likewise attacked and upheld in *Walker v. Bacon,* 11 Ida. 127, 114 Am. St. 262, 81 Pac. 155, and upon review in the Supreme Court of the United States, affirmed. (204 U. S. 311, 27 Sup. Ct. 289, 51 L. ed. 499.) The constitutionality of the Two-mile Limit Law was upheld upon the ground that it was recognized as purely a political measure exercised by the state under the police power of the state. It is claimed that this law establishes and recognizes the state's right to grant a beneficial interest in a homesteader to grasses beyond the boundaries of his possessory claim and upon the public domain, in that damages have been allowed by this court to a homesteader for trespass upon public domain within two miles of his dwelling, and in so doing, this court recognized a private right to pecuniary interest in the public domain, vested by act of the state legislature. Although damages are provided for in the act, such damages have been upheld and allowed on the theory that they arise out of the violation of the penal law, not out of any right in the homesteader. In answer to this point raised in the case of *Sweet v. Ballentyne,* Justice Sullivan said:

"The giving of damages for the destruction of grasses on the public domain, by sheep within two miles of the dwelling of a settler, is not based upon the idea that the settler has a vested property right in such grasses. The settler is permitted, under the law, to recover such damages as a penalty against the petitioner, because the latter has done that which the law forbids and makes unlawful. The legislature saw fit, in its wisdom, to fix the amount of damages

thus sustained as the measure of the penalty for such violation, and also gave the penalty to the party injured, instead of turning it to the general school fund, or otherwise applying it. Instead of fixing the penalty at any certain sum, as the legislature had a right to do, and might have done, the penalty was fixed at the actual damage sustained by the citizen, and such penalty was given to the injured party instead of turning it into the county or state treasury.''

The latter clause of C. S., sec. 8333, might mislead one to view the section as granting certain priority rights of a civil nature, and there are some expressions in *State v. Omaechevviaria*, 27 Ida. 797, 152 Pac. 280, which considered alone and segregated from the rest of the opinion might lend aid to that view. But in this court and the supreme court of the United States the constitutionality of the law has always been upheld on the essential theory that the act was purely a police power demanded by conditions in Idaho, and in no sense any attempt to define, parcel out or establish any grazing rights on the public domain. Its constitutionality is thought to depend upon the holding that it grants no privileges or rights or pecuniary interest in any cattlemen or other citizens of the state cognizable by a court of equity, or at all. As we view the decisions of this court and the courts of the United States, construing this law and upholding it, it is considered purely a police regulation. The consideration of other laws of a similar nature of this and other states strengthens the view that it is only a state regulation of the grazing industry of the state on the public domain.

The supreme court of the United States, as recently as 1917, recognized *McGinnis v. Friedman* as sound doctrine. In *Omaechevarria v. Idaho*, 246 U. S. 343, 38 Sup. Ct. 323, 327, 62 L. ed. 763, the United States supreme court, commenting on the decision in the McGinnis case, said:

''The Idaho statute makes no attempt to grant a right to use public lands. *McGinnis v. Friedman*, . . . . The state, acting in the exercise of its police power, merely excludes sheep from certain ranges under certain circumstances.

. . . . This exclusion of sheep owners under certain circumstances does not interfere with any rights of a citizen of the United States. Congress has not conferred upon citizens the right to graze stock upon the public lands. The government has merely suffered the lands to be so used. *Buford v. Houtz,* 133 U. S. 320, 326, 10 Sup. Ct. 305, 33 L. ed. 618, 620. It is because the citizen possesses no such right that it was held by this court that the Secretary of Agriculture might, in the exercise of his general power to regulate forest reserves, exclude sheep and cattle therefrom. *United States v. Grimaud,* 220 U. S. 506, 31 Sup. Ct. 480, 55 L. ed. 563; *Light v. United States,* 220 U. S. 523, 31 Sup. Ct. 485, 55 L. ed. 570.''

A policy regulatory of the grazing industry on the public domain within the state has grown up, based upon the state law as interpreted by the decision in *McGinnis v. Friedman, supra.* This policy has for a great many years been acceptable to both the state and federal government. We do not think it should be disturbed.

The judgment is affirmed. Costs to respondent.

Lee and Varian, JJ., concur.

Givens, C. J., concurs in conclusion only.