MASSACHUSETTS BONDING & INSURANCE COMPANY, Appellant, v. WALTER K. CHORN, Superintendant of Insurance.

Division One, March 29, 1918.

1. **INSURANCE TAXATION: Returned Premiums: Reinsurance.** A foreign insurance company engaged in issuing indemnity policies, health and accident policies and surety bonds in this State, is taxable on the entire amount of premiums received by it during the previous year, including premiums refunded on policies cancelled and premiums received from other companies for reinsurance.

2. ———: Foreign Corporation: Subject to Laws of State. The right of a foreign corporation to engage in business within this State depends upon the will of this State, except where its business involves interstate commerce.

3. ———: ———: Citizenship. The only rights of citizenship which a State is forbidden by the Fourteenth Amendment of the U. S. Constitution to abridge pertains to birth or naturalization. The clause of that amendment declaring that "all persons born or

naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside" does not include such citizenship as is possessed by a corporation in its corporate capacity. Such a corporation is the creature of the State creating it, and the laws of its creation do not have any extra-territorial force, except in so far as it may be the instrument of the Government in the exercise of powers with which it is invested by the U. S. Constitution.

4. ———: ———: **Due Process and Equality: Penalty.** A statute which fixes a tax of two per cent on "the premiums received, whether in cash or notes, in this State, or on account of business done in this State," is broad enough to embrace all premiums received by a foreign corporation, including the premiums returned on cancelled policies and the premiums received from other companies for reinsurance, makes a reasonable exaction for the protection afforded to the entire business transacted by the foreign corporation licensed to do business in this State, and does not, because it authorizes a cancellation of its license for failure to pay the entire tax, violate that provision of the Fourteenth Amendment which declares that no State shall "deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

5. ———: **Classification: Uniformity: Accident and Indemnity Companies.** Separate classification of fire insurance companies and companies engaged in issuing indemnity policies, health and accident policies and surety bonds, violates no just rule; and the fact that the statute authorizes the Superintendent of Insurance, in imposing the two-per-cent tax on the premiums received by fire insurance companies, to deduct the amount paid for reinsurance, while it does not authorize him to reduce the premiums on which such other companies are to pay taxes by the amount paid for reinsurance, does not violate that provision of the Missouri Constitution which requires that taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. That constitutional provision refers to property taxes, and as to excise taxes is met by a reasonable classification of the subjects of taxation and the imposition of a tax that is uniform as to all subjects within the class. There is a reasonable ground, demonstrated by great fires in large cities, for an exception in the statute that encourages fire insurance companies to reinsure their risks, which is not pertinent in indemnity and accident insurance.

6. ———: **Excise Tax.** A tax of two per cent of all premiums received in this State, or collected on account of business done in this State, by a foreign insurance company, is not a property tax, but an excise tax, and is payable although no dollar of the premiums ever came within the jurisdiction of the State.

Mass. Bond. & Ins. Co. v. Chorn.

7. ————: ————: **On Business Done.** Said excise tax is, by the statute, imposed "on the business done," and not upon the insurance furnished. When a contract of insurance has been executed and the consideration paid, the business has been done. Therefore said statute does not express the legislative intention that premiums received and returned upon the cancellation of the policies, together with all sums expended for reinsurance, or contracts of indemnity against the companies' own losses, are to be deducted from the amount of the receipts upon which the tax is to be computed.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,* Judge.

AFFIRMED.

*Harding, Deatherage, Murphy & Harris* for appellant.

(1)  Sec. 7099, R. S. 1909, is unconstitutional and void.  Sec. 3, Art. 10, and Sec. 4, Art. 10, Constitution of Missouri; Sec. 1, Art. 14, U. S. Constitution.  (2) Even though Sec. 7099, R. S. 1909, be valid, it does not require appellant to pay a tax upon: (a)  Premiums it never did receive; (b)  premiums returned because of the refusal of the assured to take the policy; (c)  premiums which were never earned and which were returned to the policy-holders.  Insurance Co. v. Van Cleave, 191 Ill. 410; People ex rel. v. Miller, 177 N. Y. 515; State ex rel. v. Fleming, 70 Neb. 540; State v. Ins. Co., 38 La. Ann. 465; Ins. Co. v. Commonwealth, 128 Ky. 174; Ins. Co. v. Herold, 198 Fed. 199.  (3)  Section 7099 should be so construed as to allow appellant to deduct from its gross premium receipts either the amount paid by it to other companies in this State for reinsurance or the amount received by it from other companies.  In other words, appellant should not be compelled to pay a double tax.  Authorities above.

*Frank W. McAllister,* Attorney-General, and *John T. Gose,* Assistant Attorney-General, for respondent.

(1)  The proviso to Sec. 7099, R. S. 1909, is not obnoxious to Sec. 3, Art. 10, of the Mo. Constitution,

requiring uniformity upon the same classes of subjects. The Legislature had the right to place fire insurance companies in a class by themselves because they do not follow the same business under the same conditions and circumstances as do life, bonding, or casualty insurance companies. The difference between fire insurance companies and other insurance companies is of such character as to justify the Legislature in making a separate class thereof if it so chooses. People v. Insurance Co., 24 N. Y. Supp. 192; Aurora v. McGannon, 138 Mo. 49. "The requirement of equality and uniformity does not preclude the division of things taxable into classes and the imposition of taxes which, while bearing equally upon different members of each class, bear unequally upon the classes in the aggregate; and a legislative division of this sort cannot be interfered with by the court." Kansas City v. Richardson, 90 Mo. App. 456; Glasgow v. Rouse, 43 Mo. 479; St. Louis v. Green, 7 Mo. App. 468; City v. Green, 70 Mo. 562; Masonic Aid v. Waddell, 138 Mo. 637; Express Co. v. City, 66 Mo. 680; 2 Dill. on Municipal Corporations, sec. 593; Veazie Bank v. Fenno, 8 Wall. (U. S.) 533; McCrary v. United States, 195 U. S. 27; State ex rel. v. Henderson, 160 Mo. 216. That there are fundamental and well-defined differences between fire insurance companies and life insurance companies and premium insurance companies and assessment insurance companies is too well known to admit of question. (2) The contention of appellant that said section 7099 violates section 4 of article 10 of the Constitution, which requires all property to be taxed in proportion to value, is based upon a misconception of the nature of the tax imposed. This constitutional guaranty is limited to a property tax. Section 7099 does not impose a tax upon property, but upon an occupation or privilege. Kansas City v. Richardson, 90 Mo. App. 456; St. Joseph v. Ernst, 95 Mo. 367; Glascow v. Rowse, 43 Mo. 479; City v. Green, 7. Mo. App. 473; Flint v. Stone-Tracy, 220 U. S. 163. (3) Appellant's contention that section 7099 is in violation of section 1 of article 14

of the Constitution of the United States, which guarantees the equal protection of the laws of the State to every citizen of the United States, is based upon the same misconception that led it to contend that such section of the statutes was in violation of the constitutional requirement relating to taxation in proportion to value. Southern B. & L. Assn. v. Norman, 31 L. R. A. 42; Society v. Coite, 73 U. S. (6 Wall.) 594; People v. Ins. Co., 92 N. Y. 328; Flint v. Stone-Tracy Co., 220 U. S. 107; Express Co. v. Seibert, 142 U. S. 350; State ex rel. v. Henderson, 160 Mo. 216. (4) Appellant's contention that, even though section 7099 be valid, it should be so construed as to permit appellant to make deductions on account of premiums returned, must be denied. In order to give the section such a construction, appellant interprets the words "premiums received" to mean premiums received, earned and retained, and cites cases from other states in which those words have been so interpreted. But those decisions of other states are not even persuasive in this case, because this is an act of the Missouri Legislature and that Legislature has by its different enactments upon this subject precluded such an interpretation of the words "premiums received." Sec. 6057, R. S. 1879; Sec. 5958, R. S. 1889; Laws 1895, p. 198, sec. 2; Sec. 8043, R. S. 1899; Laws 1905, p. 172; Sec. 7099, R. S. 1909. The failure of the Legislature through all these years to reincorporate in subsequent enactments returned premiums which it had once permitted insurance companies to deduct is not the only evidence of the intent of the Legislature. The last enactment specifically provides that in the case of fire insurance companies credits may be given for premiums paid for reinsurance. This proviso in itself and apart from the history of prior legislation precludes the idea that other deductions or credits were to be permitted. Appellant is concluded by the maxim of statutory interpretation, *Expressio unius est exclusio alterius.*

BROWN, C.—This suit was instituted by petition for injunction filed in the Cole County Circuit Court April 30, 1917. A preliminary restraining order was granted on the same day. On the first day of the following June term the defendant appeared and demurred generally to the petition. On the fifth day of the same term the plaintiff filed an amended petition in words and figures (omitting caption and signatures) following:

"Now comes the plaintiff and for its cause of action against the defendant states that it is a corporation organized under the laws of the State of Massachusetts and authorized to transact business in the State of Missouri as a foreign insurance company; that Walter K. Chorn is the duly elected, qualified, and acting Superintendent of Insurance in the State of Missouri.

"Plaintiff further states that during the year ending December 31, 1916, plaintiff issued a great number of contracts of insurance in the State of Missouri, consisting of policies of indemnity, known as liability policies, health and accident policies, surety bonds, and so forth; that the premiums on all of said contracts of insurance received by the plaintiff under sections 7099 and 7100, Revised Statutes 1909, as construed by the defendant, amounted to $195,384.61; in other words, under the construction placed upon said sections 7099 and 7100 of the Revised Statutes aforesaid by the defendant, the plaintiff received as premiums under said year on its business done in the State of Missouri during the said year the sum of $195,384.61; that in truth and in fact plaintiff did not receive the said sum of $195,384.61 on business done in the State of Missouri during said year; that part of the contracts issued by it in the State of Missouri during said year were returned and the premiums refunded to the persons to whom, on the face of said contracts, said contracts were issued; that by the terms of a large number of said contracts the parties to whom they were issued were given the right to cancel the same, in which event the plaintiff was required to refund the unearned premium from

the date of the cancellation, and the plaintiff was given the right to cancel the same by refunding the unearned premium; that of the amount of $195,384.61, the plaintiff returned to applicants for its contracts of insurance the sum of $23,504.11 on account of policies and bonds not taken or cancelled during said year; that during said year the plaintiff paid out of said sum of $195,384.61 to other insurance companies transacting business in the State of Missouri under the authority of the laws of the State of Missouri the sum of $23,096.85 for reinsurance on policies and bonds on account of which it had as aforesaid received the sum of $195,384.61, and that therefore it has only actually received on business done in the State of Missouri during said year the sum of $148,783.65, which amount includes premiums received from other companies authorized to transact business in the State of Missouri for reinsurance written by plaintiff for such other companies.

"Plaintiff further states that the defendant, acting under the assumed authority of sections 7099 and 7100, Revised Statutes 1909, has demanded from the plaintiff as a tax the sum of $3,907.68, which is two per cent on said sum of $195,384.61.

"Plaintiff further states that as construed by defendant, said section 7099 is violative of and is in conflict with section 3, article 10, of the Constitution of Missouri, and with section 4, article 10, of the Constitution of Missouri, in that said section imposes a double tax on the property of plaintiff and all companies similar to plaintiff, and in that it imposes a tax that is not uniform upon objects of the same class, and in that it imposes a tax that is not in proportion to the value of plaintiff's property sought to be taxed.

"Plaintiff further states that it is willing to pay a tax of two per cent on said sum of $148,783.65, amounting to $2,975.68, and has offered to pay the same to G. H. Middlecamp, State Treasurer of the State of Missouri, and has tendered said sum to said State Treas-

urer and now offers to pay the same into court, and that said State Treasurer has refused to accept the same.

"Plaintiff further states that defendant, acting under the assumed authority of section 7100, Revised Statutes 1909, has threatened to suspend plaintiff from the further transaction of its business in the State of Missouri and will, unless restrained by this court, suspend plaintiff from the further transaction of business in this State. Plaintiff states that if the defendant is permitted to suspend plaintiff from the further transaction of business in this State, it will be irreparably damaged and that it has no adequate remedy at law.

"Wherefore, plaintiff prays for an order of this court perpetually enjoining the defendant from suspending the plaintiff from the transaction of its business in the State of Missouri, because of its failure to pay said illegal tax of $3,907.68, and for such other and further relief as in equity and in good conscience the plaintiff may be entitled to."

The demurrer previously filed was, on the same day taken up, and, being treated as applicable to the amended petition, was sustained, and the plaintiff declining to plead further, final judgment was entered dismissing its petition, from which this appeal was duly taken.

I. As will be seen from the foregoing statement, the object of this suit is to enjoin the defendant, in his capacity of Insurance Commissioner of this State, from suspending the plaintiff, a corporation of the State of Massachusetts, from the further transaction of its business in this State as a foreign insurance company, until it shall have paid the full sum of $3,907.68 demanded of it as tax assessed upon premiums received in this State, or upon business done in this State, under the provisions of Section 7099, Revised Statutes 1909.

The petition states, in substance, that during the year ending December 31, 1916, plaintiff issued a great number of contracts of insurance in the State "con-

sisting of policies of indemnity, known as liability poli-
cies, health and accident policies, surety bonds, and, so
forth," the premiums received on all of which amounted
to $195,384.61, as construed by defendant, while in fact
it did not receive that amount, because out of the said
amount of premiums so received it returned to appli-
cants for its contracts of insurance the sum of $23,504.11
on account of policies and bonds not taken, or cancelled
during said year, and paid to other insurance companies
lawfully transacting business in this State the further
sum of $23,096.85 for reinsurance on policies and bonds
on which it had received premiums included in said
amount on which the tax was charged, so that it had
actually received on business done in the State during
that year the sum of $148,783.65, which included prem-
iums received from other companies authorized to trans-
act business in this State for insurance written for them
by plaintiff.   On this sum the plaintiff offers to pay
the two per cent tax imposed by the section cited.

The exactions complained of are, it will be observed,
divided into two classes only: (1) the tax on premiums
returned to the insured on policies undelivered or can-
celled, and (2) the tax on premiums expended for re-
insurance by plaintiff on the same risks
Sub-Classification.   in other companies doing business in the
State.   It is, perhaps, intimated, but not stated in the
petition, that the first of these includes three sub-class-
es: (1) premiums collected on contracts issued and re-
turned and the premiums refunded; (2) premiums
collected and returned on policies cancelled by plaintiff,
at its own instance; and (3) premiums collected and
returned on policies cancelled at the instance of the
insured under the terms of such policies.   There is noth-
ing, however, in the terms of the petition which indi-
cates the amount of the returned premiums, if any,
belonging to any one of these three sub-classes.   Its
theory seems to be that all premiums received and re-
turned to the insured, either by reason of the non-de-
livery of the policies for which they had been paid or

on account of their subsequent cancellation for any reason, are exempt from the tax. There is, therefore, no reason why this court should, independently of the issues raised by the pleading, enter upon a purely academic discussion as to the status, for purposes of taxation under this section, of sums paid by and held for prospective policy-holders, for application as premiums when the contracts take effect.

II. The appellant, in its brief says that Section 7099 of Revised Statutes 1909, under which this tax is claimed by the State, "is unconstitutional and void," citing, without comment or argument, Section 1 of the Fourteenth Amendment of the Constitution **Foreign Corporation.** of the United States as sustaining that position. It does not call our attention to the particular clause of that section upon which it depends to sustain the assertion. This is, perhaps, owing to the fact that during the fifty years since it became a part of the supreme law of the land it has been frequently before the distinguished court which has the final word in its interpretation, and has foreclosed every avenue through which it might reach and apply to the questions involved in this case.

It was said by the Supreme Court of the United States in Hooper v. California, 155 U. S. 1. c. 652, that "the principle that the right of a foreign corporation to engage in business within a State other than that of its creation, depends upon the will of such other State, has been long settled, and many phases of its application have been illustrated by the decisions of this court." Many cases are cited in support of this statement, which it is not necessary to otherwise name. The only exception to this rule is where a corporation created by one State rests its right to enter another and to engage in business therein upon the Federal nature of its business. [*Ibid.*] This exception and the nature of the distinction which it involves, was fully discussed by that court in Text Book Co. v. Pigg, 217 U. S. 91, as well as

by this court in a cause in which the same plaintiff sued upon a similar cause of action. [International Text Book Co. v. Gillespie, 229 Mo. 397.] Even were there room for it somewhere in the facts in this case it is not in issue here, because no question under the commercial clause is raised by the pleading or urged in the appellant's brief. It is not for us to make the objection. [Southwestern Oil Co. v. Texas, 217 U. S. 1. c. 118.] The section referred to is introduced by its own definition of citizenship as follows: "All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside." The only road to the citizenship the privileges or immunities of which the State is here forbidden to abridge, lies through birth or naturalization, and does not include such citizenship as is possessed by corporations in that capacity. [Orient Insurance Company v. Daggs, 172 U. S. 557.] These are creatures of the State which creates them, and the laws of their creation have no extra-territorial force except in so far as such corporations may be instruments of the general government in the exercise of the powers with which it is invested by the Federal Constitution. As we have already said, no infringement of these powers is in question in this case.

III. The only provision of the section of the Fourteenth Amendment invoked by the appellants which can give plausibility to its contention is as follows: "Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Under this provision the question arises whether the provision of the State statute under which this tax is sought to be imposed, in connection with the proceeding provided for its assessment and collection, including the penalty by suspension from business in this State for its non-payment, constitutes due process of law or deprives it

*Due Process and Equality.*

of the equal protection of the laws. If it has that effect in either of the respects mentioned the provisions and all proceedings under it are void, because they are forbidden by the supreme law of the land.

In American Manufacturing Co. v. St. Louis, 270 Mo. 40, we said, quoting from Judge Cooley (1 Cooley on Taxation, 25.), "the power of taxation, however vast in its character, and searching in its extent, is necessarily limited to subjects within the jurisdiction of the State;" and that "the State may exercise this sovereign right with respect to all persons, things and business activities which exist under the protection of its laws," and that, "unless restrained by provisions of the Federal Constitution, the power of the State as to the mode, form and extent of taxation is unlimited, where the subjects to which it applies are within her jurisdiction." The thing taxed in this case is the right to transact the business of various kinds of so-called insurance, relating, among other things, to the life, health and safety of individuals, indemnity against liability of employers to employees injured in their service and loss incurred by reason of their defaults. All these kinds are included under the general name of insurance, and, so far as this appellant is concerned, are under the jurisdiction of the Insurance Department of the State by which the tax is ascertained and assessed. The payment of the tax entitles it, under the laws of the State, to transact this business in its capacity as a corporation. The amount of the tax is fixed at two per cent on "*the premiums received, whether in cash or in notes, in this state, or on account of business done in this state.*" That this is a tax upon business done in this State under the protection of its laws there can be no doubt. The penalty provided for its collection against which this proceeding is especially directed consists merely in withholding the right until the consideration prescribed for its exercise shall have been paid. That this is, in its nature, reasonable, appears from its statement. The principle upon which the tax is assessed is a just and

reasonable one.  The business of which the State neces-
sarily assumes the oversight and protection, is measured
by the financial magnitude of its licensed and protected
activities, which constitute a standard which we have
lately had occasion to approve in American Manufactur-
ing Co. v. St. Louis, supra.  The State does not assume
to guarantee profit from any of the licensed and protect-
ed operations.  If the position now taken by the State
is correct it receives nothing on account of work done in
its offices in this State in the cancellation of policies and
reinsurance of risks which may have become too heavy
when measured by the standard of its own capital, but is
satisfied with the rate fixed upon the initial transaction.
The only interest of the State lies in the additional
facility it affords its people and its only duty is the
protection of that facility.

This question, so far as it is governed by the pro-
visions of the Fourteenth Amendment to which we have
referred, is completely disposed of by the decision of
the Supreme Court of the United States in Southwest-
ern Oil Co. v. Texas, supra.  It was there held, in the
opinion by Mr. Justice HARLAN, in which the entire
court concurred, that: "The State, keeping within the
limits of its own fundamental law, can adopt any sys-
tem of taxation or any classification that it deems best
for the common good and the maintenance of its govern-
ment, provided such classification be not in violation
of the Fourteenth Amendment."  The case is interest-
ing in its facts and will receive further notice in this
opinion.  We therefore hold that the statute under which
this tax is attempted to be imposed is not, as interpreted
by the respondent, violative of any provisions of the
first section of the Fourteenth Amendment of the Feder-
al Constitution.

IV.  It is contended by the appellant that in the
matter of classification it is violative of section three
of article ten of the State Constitution, which requires
that taxes shall be uniform upon the same class of sub-

jects within the territorial limits of the authority levying the tax, because, as interpreted by the Insurance Commissioner, it subjects all other insurance companies, including the plaintiff, to a greater tax than that imposed upon fire insurance companies. In other words, in the calculation of the amount of the two cent tax, fire insurance companies are authorized to deduct the amount paid for reinsurance, while the plaintiff is not permitted to make such deduction. It is argued therefrom that the power of the Legislature to classify insurance companies for the purposes of taxation is withheld from the lawmaking branch of the government. It is not, nor can it ever be, plausibly contended that if such a classification is admissible it can be created by any form of words that clearly and unmistakably expresses the legislative intention to do so, so that the clause in Section 7099 which expressly permits fire insurance companies to deduct from premiums received, premiums paid for reinsurance of the same risks for their own benefit, so that in that respect and to that extent fire insurance companies are placed in a class by themselves for the purposes of this taxation. Of this there can be no doubt. This same question in a simpler form was lately decided by this court in Bankers' Life Insurance Company v. Chorn, 186 S. W. 681. It was contended in that case that the exemption of life insurance companies on the assessment plan from the very occupation tax we are now considering violated this constitutional provision. This court in its opinion by Bond, J., said: "That section (7099) as has been shown, in no way relieves either a foreign or a domestic insurance company, working on the assessment plan, from the payment of taxes on their property. The Legislature would have no power to exempt any real or personal property from taxation, other than specified under the Constitution . . . Neither has it done so in this instance. It only exempts all 'assessment' insurance companies from paying an excise of two per cent on the money assessed against their

*Classification of Insurance Companies.*

living policy-holders to pay the beneficiaries of deceased policy-holders.'' The rule is there already stated, and none is more firmly settled, than that while this provision of the Constitution prescribes a definite rule for the imposition of *property* taxes, no such rule can be or was intended to be formulated to cover the imposition of an excise tax on occupations like the one in question. It is necessary in all such cases that the Legislature classify the subjects of such taxation so as to reasonably distinguish them from each other and a uniform tax upon any class is all that is required. [State ex rel. v. Henderson, 160 Mo. l. c. 216-17.] ''The requisites of the Constitution may be carried out by a uniform tax on licenses to persons following the same pursuit, under the same conditions and circumstances; a difference therein will justify a discrimination in the tax.'' [City of Aurora v. McGannon, 138 Mo. l. c. 49.] See also Masonic Aid Assn. v. Waddill, 138 Mo. l. c. 637, where this court said that: ''It is well settled law, 'that the requirement of equality and uniformity does not preclude exemption from taxation, nor the division of things taxable into classes, and the imposition of taxes which, while bearing equally upon the different members of each class, bear unequally upon the classes in the aggregate.' ''

The separate classification of fire insurance companies and companies engaged in the business transacted by plaintiff violates no rule to which our attention has been directed in argument. While the plaintiff's business has some points of contact with trust companies, it has none with fire insurance companies. We see no reason to disturb the holding of the circuit court that there had been no showing that this separate classification was unjust, unreasonable or unauthorized.

V. Section four of Article ten of the Constitution requiring property to be taxed in proportion to its value does not, nor can it by its terms, apply to any tax other

**Excise Tax.** than a property tax. This was long ago decided by this court in Express Co. v. City of St. Joseph, 66 Mo. 675. In addition to what we have incidentally said on that subject in the preceding paragraphs we will say that this tax is not imposed upon *property* in any sense. The only property right involved in this tax is the right of appellant to acquire property by the exercise of its corporate capacity in this State, purchased and paid for by the payment of this tax. It is measured by money collected in this State or on business done in this State. The tax is payable although no dollar of the premiums even came within our jurisdiction.

VI. It is finally contended that Section 7099 expressed the legislative intention that premiums received and returned in whole or in part upon the cancellation of the policies or other contracts upon which **Meaning of Statute.** they had been paid, together with all sums expended for reinsurance, or contracts of indemnity against its own losses, shall be deducted from the amount of receipts upon which the tax is to be computed.

It is perfectly true that the Legislature, in the imposition of a tax by way of compensation for the right of a foreign corporation to do business in its corporate capacity in this State, might have measured it by the profits it should earn in this State, or permitted the compensation of its agents to be deducted from the gross or other premiums received from it. It might also have deducted its losses, or the cost of reinsurance to indemnify it against such losses, which would, *pro tanto,* amount to the same thing. In any case we would have to look to the law to find the legislative will and give it judicial effect. When found, we can only inquire if it be within its constitutional powers. We have no right to modify it, even though we think we might have done better.

The statute is as follows:

"Every insurance company or association not organized under the laws of this State, shall, as hereinafter provided, annually pay a tax upon the premiums received, whether in cash or in notes, in this State, or on account of the business done in this State, for insurance of life, property or interests in this State, at a rate of two per cent per annum in lieu of all other taxes except as in this article otherwise provided, which amount of taxes shall be assessed and collected as hereinafter provided: *Provided,* that fire insurance companies shall be credited with premiums on reinsurance with companies authorized and licensed to transact business in Missouri, which reinsurance shall be reported by the company reinsuring such business; but no credit shall be allowed any fire insurance company for reinsurance in companies not licensed to transact business in Missouri."

It will be observed that the nature of the tax is a tax on "business done" and not upon "insurance furnished." It is too plain for argument that when a valid contract of insurance has been executed and full consideration paid, the business has been done and the premium received. Were the same language used in a private contract between the insurance company and the soliciting agent with respect to his compensation, is it possible that it would be construed as an obligation on his part to return the amounts received by him whenever the company should see fit to cancel the policy and return the premium? And is it not to be presumed that in such cases the company, if it should consider that its interest required it would, by the terms of the cancellation, take care of the cost of effecting the insurance? We make these suggestions solely by way of illustration; for the appellant, in its petition, has stated as little as possible of the nature and terms of all these transactions, thus placing before us the naked question whether the return of any part of the premium received, will, of itself, operate as a *pro rata* reduction of the tax subsequently payable.

This statute, omitting the proviso relating to fire insurance companies, was first incorporated in the Revised Statutes of 1879, as Section 6057, and has frequently, since that time, passed under the eye of the Legislature, with slight amendments having no connection with this case until 1905, when that proviso was added, and fire insurance companies were placed upon a footing of their own in respect to the taxation of premiums expended for reinsurance. This was done for reasons apparent to all the world excepting, perhaps, companies which, like this appellant, were exclusively engaged in the business of furnishing, for a consideration called premiums, other classes of indemnity. The great fire in Boston followed by the one in Chicago, and later in other great cities, with their enormous investments in costly buildings, the destruction of which had carried with it the destruction of many insurance companies, directed the attention of the people to the weak point in their fire indemnity. While life and accident sometimes receive shocks like that which has since come in the destruction of the Lusitania, these were weak and harmless in comparison with the dangers from fire which attended the phenomenal growth in costly architecture as well as in population of the great cities. The desirability of encouraging a wider distribution of insurance capital in this class of enterprise had come home with much force to all who depended upon fire insurance, and it seems to us natural that this should suggest the encouragement of reinsurance. The form which it took in this proviso naturally protected the interests of the people of the State in this respect, by encouraging reinsurance and by inviting companies to come into the State to write it. The classification of fire companies for this purpose was both natural and wise.

In enacting this proviso the attention of the Legislature was evidently directed to the fact that it was thus separating fire insurance companies from all others under the control of the Insurance Department, in the

matter of exempting a portion of their gross receipts for premiums from the taxation which had before fallen upon all alike. This was, of itself, evidence that they were satisfied with the plain grammatical meaning in other respects, of the words they had used in the original enactment. Any legislative attempt to forestall the artificial construction contended for by the appellant would have discredited its expressed purpose, and opened the way to endless confusion.

There seems to be a wide difference in the views expressed by the courts of other States upon statutes having more or less similarity to our own, with reference to the premiums returned upon the cancellation of policies. These are fairly represented by the Indiana case of State ex rel. v. Continental Insurance Company of New York, 116 N. E. 929, decided by the Appellate Court of Indiana last June, and cited here by appellant, and Fire Association of Philadelphia v. Love, 101 Texas, 376, decided by the Supreme Court of Texas in 1908, cited by respondent.

While we have great consideration for the opinions of the appellate courts of our sister states, when these differ on a question actually before us we must choose between them. In construing a statute of our own State it is our first duty, however, to fairly ascertain, as best we can, the constitutional intent of our own Legislature, and adjudge accordingly.

We therefore hold that the tax in question is assessable upon the gross amount of appellant's premiums received in this State, or on account of its business done in this State, without deduction of premiums returned on account of cancellation of policies or amounts paid for reinsurance of its risks.

It follows that the judgment of the circuit court for Cole County is affirmed. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur.