(No. 6428.  March 31, 1937.)

UNITED PACIFIC INSURANCE COMPANY, a Corporation, Respondent, v. W. H. BAKES, as Director of the Bureau of Insurance of the State of Idaho.

[67 Pac. (2d) 1024.]

J. W. Taylor, Attorney General, Bert H. Miller, former Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Appellant.

J. F. Martin for Respondent.

GIVENS, J.—Respondent contends that in the portion of section 40–804, I. C. A., as amended by chapter 168, 1933 Session Laws, p. 302,[1] preceding the proviso therein, "gross

[1] Section 40–803. Annual Tax Statement and Tax—Fire and Marine Companies.—All insurance companies licensed to transact business in this state in classes 1 and 2, or either of them, of Chapter 3 of this title, shall file with the Department of Finance annually on or before the first day of March of each year, a statement, under oath, showing the amount of all gross premiums received by said company on risks situated in this state during the year ending December thirty-first next preceding and pay to the department a tax of* three per cent. on the amount of such gross premiums collected in excess of premiums and cancellations returned to such policyholders.

Section 40–804. Annual Statement and Tax—Other Companies.— All insurance companies licensed to transact business in this state in one or more classes 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14 of Chapter 3 of this title shall file with the Department of Finance annually on or before the first day of March of each year, a statement, under oath, showing the amount of all gross premiums received by said company in this state during the year ending December thirty-first next preceding, and shall pay to the department a tax of . . . . three per cent. on all such gross premiums collected: provided, however, that companies licensed to transact business in class 3 may in computing the gross premiums deduct the amount of refunds, dividends and coupons paid policyholders in the nature of return premiums.

premiums received'' and ''collected'' means gross premiums less refunds or repayments because of cancelations, alleging in its complaint that for 1935 it received total premiums of $101,254.64, and that:

'' . . . . plaintiff (respondent) deducted and took credit for the further sum (further that is than other deductions not involved or pertinent to the issues herein) of $28,019.50 which represented business placed upon its books during the year 1935, and done in the State of Idaho, but upon a part of which no premium was ever paid by the various assureds nor any money collected; and this plaintiff thereupon made a flat cancellation of said policies. That the remaining portion of the sum of $28,019.50 represents insurance premiums which were returned to various assureds during the year 1935 by this plaintiff where the policies of insurance were either cancelled by the plaintiff herein or by the various assureds at their request, but in either event, the returned unearned premiums were actually due to the various assureds and this plaintiff had no right either in law or in equity to retain or hold the same; that every policy of insurance written by this plaintiff herein constitutes a contract between the plaintiff and the assured, and that each policy so written by this plaintiff during the year 1935 contains among other things a provision to the effect that upon the cancellation of . a policy, the plaintiff herein would return to the assured the unearned portion of the premiums so paid, and in harmony and in compliance with said provision, this plaintiff did in each instance, return the unearned portion of said cancelled policies.

''V.

''That this plaintiff collected as earned premiums during the year 1935, in the State of Idaho, the total sum of $72,275.35 and upon this amount paid within due time, the statutory three (3%) per cent. premium tax as provided by the statutes of the State of Idaho, but did not pay, and has refused to pay, and still refuses to pay to the State of Idaho, a premium tax upon the sum of $28,019.50 which represents the unearned premiums on policies cancelled flat by this plaintiff company and upon which it collected no premium whatsoever, and upon the unearned premiums returned to

the various assureds in the State of Idaho, because of the cancellation of policies either by plaintiff or by the various assureds, and the question in controversy between this plaintiff and the defendant is, whether this plaintiff is liable for and shall be required to pay to the State of Idaho a premium tax on the total gross amount of business placed upon its books or whether the tax is levied upon its gross earned premiums collected.''

further alleging that if the tax is collected in accordance with appellant's views it is unconstitutional.

Appellant admitted the facts and in addition there was filed this stipulation:

''A. Defendant has been Director of the Bureau of Insurance of the State of Idaho since March, 1931, and to the best of his knowledge all of the insurance companies of similar classification except the plaintiff writing business under class '6,' that is, those insurance companies writing general liability insurance in the State of Idaho have paid to the State of Idaho a tax on the premiums received by them in the State of Idaho without deducting in their returns from the gross premiums received those premiums which they have returned to the various assureds where the policies of insurance have been cancelled either by the company or ordered cancelled by the assured. . . . . ''

From a declaratory judgment adopting respondent's view, this appeal is taken.

The sole initial question is one of legislative intent as expressed in the statute. The first appearance of this enactment is section 18, chapter 228, 1911 Session Laws, page 739, as follows:

''Sec. 18. All life and miscellaneous insurance companies now doing business in this State, or that may hereafter do business in this State, must file with the Insurance Commissioner, annually on or before the fifteenth day of March of each year, a statement, under oath, stating the amount of all gross premiums received by said company during the year ending December thirty-first preceding, in this State, and shall pay to the Insurance Commissioner a tax of two (2) per cent on all such gross premiums collected.

"All fire insurance companies now doing business in this State or that may hereafter do business in this State, must file with the Insurance Commissioner, annually on or before the fifteenth day of March of each year, a statement under oath, stating amount of all gross premiums received by said company during the year ending December thirty-first preceding, in this State, and pay to the Insurance Commissioner a tax of two (2) per cent on all such gross premiums collected, less premiums and cancellations returned to policy holders. . . . . "

from which it will be noticed that as to all life and miscellaneous insurance companies the tax of 2 per cent, was levied on all "gross premiums received" and "collected" without deduction, whereas, as to fire insurance companies, there was express provision allowing deductions as in substance contended for by respondent. This section was amended in section 6, chapter 97, 1913 Session Laws, page 391 to read as follows:

"Sec. 18. All insurance companies licensed to transact business in this State in one or more of classes (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), and (14) of Section 10 of this Act shall file with the Insurance Commissioner annually, on or before the first day of March of each year, a statement, under oath, showing the amount of all gross premiums received by said company in this State during the year ending December 31st next preceding, and shall pay to the Insurance Commissioner a tax of two per cent (2 per cent) on all such gross premiums collected.

"All insurance companies licensed to transact business in this State in classes (1) and (2), or either of them, of Section 10 of this Act, shall file with the Insurance Commissioner annually, on or before the first day of March of each year, a statement, under oath, showing the amount of all gross premiums received by said company on risks situated in this State during the year ending December 31st next preceding, and pay to the Insurance Commissioner a tax of two per cent (2 per cent) on the amount of such gross premiums collected in excess of premiums and cancellations returned to such policy holders. . . . . "

Instead of the words "all life and miscellaneous insurance companies" as contained in the original Section 18, without further classification or designation, the amendment says "all insurance companies licensed to transact business in this State in . . . . classes (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), and (14) of Section 10 of this Act (1913) shall file with the Insurance Commissioner annually . . . . " and the second paragraph designated classes (1) and (2) of section 10 instead of fire insurance companies as permitted to make deductions.

The section 10 referred to being set forth at page 397 of the 1913 Session Laws, classifying insurance business in fourteen divisions or classes. Therefore and thereby, while the amendment in 1913 classified insurance businesses, the provisions of section 18 of the 1911 act amended in section 6 of the 1913 act remained, so far as the controversy here is involved, the same.

Chapter 119, of the Session Laws, 1919, page 405, amended what was originally the first paragraph of section 18, 1911 Session Laws which had been carried into the Compiled Laws, as section 220:91[1] granting to class 3 (life), the right to deduct refunds, dividends and coupons paid policyholders in the nature of returned premiums.

Respondent is engaged in a general casualty and surety insurance business, thus being in classes 4 and 5, sections 40–305, and 40–306, I. C. A., thus not in one of the excepted classes entitled to make deductions.

The codifier of the Compiled Laws split up the original section 18, putting the first sentence of the second paragraph into sec. 220:90; the first paragraph into 220:91; the second sentence in the second paragraph into 220:92; and putting the fourth sentence in the second paragraph of section 18, *supra*, into sec. 220:93; which, thus separated, were carried into the Compiled Statutes, and in turn into the present Idaho Code Annotated as secs. 40–803 et seq. Such reparagraphing does not affect the construction to be placed upon

[1] Chapter 78, 1917 S. L., p. 241; vol. 10, Supreme Court Minute Book, page 134, March 27, 1917; chap. 2, 1919 S. L., p. 4; chap. 63, 1919 S. L., p. 197; Preface pages iii–v, Idaho Compiled Statutes, 1919.

the statute, nor has the substance been changed. (39 C. J. 897, sec. 494.) The tracing and analysis of the statutes has this effect upon the controversy: Namely, that when first enacted and to the present, a distinction has existed between certain kinds of insurance business in the computation of the gross premiums upon which the tax is levied. The amount of the tax was increased from 2 per cent to 3 per cent in the 1933 amendment.

The following cases are cited by respondent in support of its contention: *In re Continental Casualty Co.*, 189 Iowa, 933, 179 N. W. 185; *German Alliance Ins. Co. v. Van Cleave*, 191 Ill. 410, 61 N. E. 94; *People v. Miller*, 177 N. Y. 515, 70 N. E. 10; *State v. Continental Ins. Co.*, 67 Ind. App. 536, 116 N. E. 929; *State v. Fleming*, 70 Neb. 523, 529, 97 N. W. 1063; *State v. Wilson*, 102 Kan. 782, 172 Pac. 41, L. R. A. 1918D, 955; *Mutual Benefit Life Ins. Co. v. Commonwealth*, 128 Ky. 174, 107 S. W. 802.

Appellant cites the following cases in support of its contention: *Massachusetts Bond & Ins. Co. v. Chorn*, 274 Mo. 15, 201 S. W. 1122; *Fire Assn. of Philadelphia v. Love*, 101 Tex. 376, 108 S. W. 158; *State v. Hyde*, 304 Mo. 447, 264 S. W. 381; *Jefferson Stand. Life Ins. Co. v. King*, 165 S. C. 219, 163 S. E. 653; *Metropolitan, etc., v. State*, 186 Ind. 407, 116 N. E. 579; *Citizens Mut. Ins. Co. v. Lott*, 45 Ala. 185; *State v. Tomlinson*, 99 Ohio St. 233, 124 N. E. 220.

These decisions cannot be harmonized or distinguished, and it is idle to attempt to do so herein, for this reason: While the precise words ''gross premiums collected or received,'' or other synonymous terms were considered, construed, defined, applied, interpreted, etc., by the various decisions, either the statutes construed contained, or the decisions which support respondent in effect read into the statute, terms such as ''premiums earned,'' ''business done,'' ''premiums retained,'' or other like nomenclatures conspicuously absent from our statute and which if applied, completely disregard the early and initial legislative expressed distinction between those classes of insurance where deductions of the kind now sought by respondent were not included but expressly given to fire insurance companies, now contained in secs. 40–803 and 40–804, I. C. A. Respondent's

contention makes meaningless the language of the act, which by the proviso modified the term "gross premiums" allowing for deduction in fire insurance. If "gross premiums" without this proviso meant the same thing as urged by respondent, why did the legislature make the proviso? We cannot consider that the legislature did not thus clearly enunciate its meaning and intention. Our statute, if read in the arrangement as originally passed, is thus clear and definite.

■ Furthermore while it is unnecessary for us to construe section 40–902, I. C. A., as such, the following portion of that section has a legitimate bearing on our search for legislative intent; *Amsbary v. City of Twin Falls,* 34 Ida. 313, 200 Pac. 723; *Cook v. Massey,* 38 Ida. 264, 220 Pac. 1088, 35 A. L. R. 200; *State v. Kelley,* 39 Ida. 668, 229 Pac. 659:

" . . . . A resident agent shall countersign all policies so issued (except policies of life insurance) and shall receive the full commission *when the premium is paid, to the end that the state may receive the tax required by law to be paid* on the premiums collected for insurance on all persons and property resident or located within this state: provided, this section shall not apply to life insurance companies . . . . " (italics ours).

This section comes to us from the 1911 act, in identical language, and lends at least light to this extent: that the time when the premium is paid to the company is correlated to the meaning to be attached to the words "received" and "collected" in section 40–804, *supra.*

■ Furthermore, the stipulation recites that at least for some time past the Director of the Bureau of Insurance has placed upon the statute involved the construction contended for by appellant, which contemporary construction by a co-ordinate branch of the government, charged with the duty of enforcing the statute, is when called upon by the courts to construe the statute, entitled to consideration and carries weight for two reasons: First, it is a practical and administrative construction of the act; and second, where extended over a period of time leads to the conclusion that such construction being known to the legislature has received its tacit approval as being correct. (*In re Speer,* 53 Ida. 293, 23 Pac.

(2d) 239, 88 A. L. R. 1086; *Bashore v. Adolf,* 41 Ida. 84 at 91, 238 Pac. 534, 41 A. L. R. 932; *State v. Omaechevviaria,* 27 Ida. 797, 152 Pac. 280; 25 R. C. L. 1043, sec. 274; 59 C. J. 1025 et seq., sec. 609; 59 C. J. 1030; 59 C. J. 1064, sec. 626, n. 54.) While the conclusion reached is opposite to ours, the supporting statutory and administrative history being likewise opposite, the reasons support our conclusion in *New England Mut. Life Ins. Co. v. Reece,* 169 Tenn. 84, 83 S. W. (2d) 238 at 241.

The 1937 session of the legislature, confirmed the conclusion that appellant's theory is correct, by amending such sec. 40–804, *supra,* to read, as pertinent herein, as follows:

" . . . . showing the amount of all gross premiums received by said company *on risks* in this state during the year ending December thirty-first next preceding, and shall pay to the department a tax of three per cent, on . . . . *the amount of* such gross premiums collected *in excess of premiums and cancellations returned to such policyholders:* provided, however, that *only such* companies licensed to transact business in class 3 may in computing the gross premiums *also* deduct the amount of . . . . dividends and coupons paid policyholders. . . . . "

approved by the Governor, February 16, 1937, chapter 33, 1937 Session Laws, page 44. The rule being that where an amendment is made it carries with it the presumption that the legislature intended the statute thus amended to have a meaning different than theretofore accorded it. (*In re Segregation of School Dist. No. 58,* 34 Ida. 222 at 228, 200 Pac. 138; *Moody v. State Highway Dept.,* 56 Ida. 21, 48 Pac. (2d) 1108; 59 C. J. 1097, n. 35; 25 R. C. L. 1051, sec. 276, nn. 4, 5.)

Respondent argues that if appellant's theory be countenanced it will make the act unconstitutional because there is no justifiable basis for allowing deductions as to certain classes of insurance and not as to others as provided in sec. 40–803, and sec. 40–804, I. C. A., citing *Penney Co. v. Diefendorf,* 54 Ida. 374, 32 Pac. (2d) 784. The matter of classification is discussed there at length, various pertinent discussions from decisions being quoted and referred to, with this conclusion, which we believe answers respondent's contention:

"This court has specifically held that the legislature has the right and power to classify for taxation purposes, and in so classifying make exemptions. In *Diefendorf v. Gallet,* 51 Ida. 619, 642, 10 Pac. (2d) 307, 316, this court said:

" 'The state has the power to classify for the purposes of taxation, only limited by the rule that the classification must be reasonable and founded upon differences between the parties. The equality clause does not forbid reasonable classification. Discrimination through classification is said to violate that clause only where it is such as "to preclude the assumption that it was made in the exercise of legislative judgment and discretion." (*Stebbins v. Riley,* 268 U. S. 137, 45 Sup. Ct. 424, 69 L. ed. 884, 44 A. L. R. 1454).' "
See, also, 61 C. J. 309, sec. 301, n. 83.

In conclusion, without intending to delineate exact niceties as to the distinction between property, excise or license taxes, it is apparent that the exaction in the case at bar is in the nature of an excise lieu property tax, not a license tax, and the words "gross premiums received" and "collected" are merely a measuring stick for determining what amount and how the property of the chargeable insurance companies shall be determined and fixed for assessment, since license fees are separately provided for in section 40–811, I. C. A., and section 40–806, I. C. A., specifically states that this 3 per cent tax shall:

" .... be in lieu of all other taxes upon premiums *and upon the personal property of such companies and the shares of stock or assets thereof;* provided, that all real property, if any, of such company, shall be listed, assessed and taxed the same as real property of like character of individuals" (italics ours).
See *National Savings & Loan Assn. v. Gillis,* 35 Fed. (2d) 386.

The judgment is therefore reversed. Costs awarded to appellant.

Morgan, C. J., Holden and Ailshie, JJ., concur.